599 N.W.2d 736 (1999)
234 Mich. App. 640
In the Matter of Nathaniel Jamar Abraham, Minor.
PEOPLE of the State of Michigan, Plaintiff-Appellant/Cross-Appellee,
v.
Nathaniel Jamar ABRAHAM, Defendant-Appellee/Cross-Appellant.
Docket No. 212099.
Court of Appeals of Michigan.
Submitted January 6, 1999, at Detroit.
Decided March 30, 1999, at 9:15 a.m.
Released for Publication June 29, 1999.
*738 Jennifer M. Granholm, Attorney General, Thomas L. Casey, Solicitor General, David G. Gorcyca, Prosecuting Attorney, Daniel L. Lemisch, Chief, Appellate Division, and John S. Pallas, Assistant Prosecuting Attorney, for the people.
William Lanstat and Daniel Bagdade, West Bloomfield, for the defendant.
Before HOEKSTRA, P.J., and DOCTOROFF and O'CONNELL, JJ.
*737 O'CONNELL, J.
The prosecutor appeals by leave granted, and defendant cross appeals, from the *739 trial court's[1] orders granting defendant's motion to suppress evidence of his statements to the police and denying defendant's motion to quash the petition. We affirm as regards the motion to quash, but reverse as regards the motion to suppress.
This case arises from the fatal shooting of Ronnie Green, and the nonfatal shooting of Michael Hudack, on October 29, 1997. Two days later the police questioned defendant about the shootings. According to the investigating officer, defendant first offered various innocent explanations of his role in the matter, then finally implicated himself in the shooting of Green. A probable cause hearing with regard to the prosecution's petition requesting that defendant, then aged eleven years, be tried as an adult[2] was held the following month. At the hearing, friends of defendant testified that defendant broke into a house and stole a .22 caliber rifle, practiced shooting at balloons and streetlights, stated an intention to shoot gang members who had been bothering him, and then boasted that he had shot someone. Defendant was bound over for trial on one count of first-degree premeditated murder, M.C.L. § 750.316(1)(a); MSA 28.548(1)(a), one count of assault with intent to commit murder, M.C.L. § 750.83; MSA 28.278, and two counts of possession of a firearm during the commission of a felony, M.C.L. § 750.227b; MSA 28.424(2).

I. Waiver of Miranda Rights
The police took defendant from school to the police station for questioning, stopping on the way to apprise defendant's mother of the matter. Defendant's mother joined defendant at the police station several minutes after defendant arrived with the police. Defendant and his mother were advised of defendant's rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in response to which they indicated that defendant did not wish to speak to an attorney and agreed to waive defendant's right to remain silent. Both signed a document stating that defendant waived his Miranda rights. Defendant does not allege any misconduct on the part of the police.
The prosecutor argues that the trial court erred in ruling that defendant's statements to the police must be suppressed on the ground that defendant did not knowingly and intelligently waive his Miranda rights. We agree.
"Statements of an accused made during custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waives his Fifth Amendment rights." People v. Howard, 226 Mich.App. 528, 538, 575 N.W.2d 16 (1997), citing Miranda, supra at 444, 86 S.Ct. 1602 and People v. Garwood, 205 Mich.App. 553, 555-556, 517 N.W.2d 843 (1994).
An appellate court must give deference to the trial court's findings at a suppression hearing. Although engaging in de novo review of the entire record, [the reviewing court] will not disturb a trial court's factual findings regarding a knowing and intelligent waiver of Miranda rights unless that ruling is found to be clearly erroneous. [People v. Cheatham, 453 Mich. 1, 29-30, 551 N.W.2d 355 (1996) (Boyle, J., joined by Brickley, C.J., and Riley, J., and by Weaver, J., in pertinent part) (citations and internal quotation marks omitted).]
Whether a waiver was voluntary and whether an otherwise voluntary waiver was knowingly and intelligently tendered form separate prongs of a two-part test for a valid waiver of Miranda rights. Howard, supra at 538, 575 N.W.2d 16. Both inquiries must proceed through examination *740 of the totality of the circumstances surrounding the interrogation. Fare v. Michael C., 442 U.S. 707, 724-725, 99 S.Ct. 2560, 2571-2572, 61 L.Ed.2d 197 (1979). The state has the burden of proving by a preponderance of the evidence that there was a valid waiver of the suspect's rights. Cheatham, supra at 27, 551 N.W.2d 355.

A. "Voluntary" Waiver
"[T]he voluntariness prong is determined solely by examining police conduct." Howard, supra at 538, 575 N.W.2d 16. In this case, the trial court failed to address whether defendant spoke to police voluntarily as something apart from whether defendant knowingly and intelligently did so. However, the court repeatedly commended the police for their conduct in this matter in general and found in particular that the police did not detain defendant excessively, subject him to actual or threatened physical abuse, or deprive him of food, sleep, or medical attention. The court additionally found that defendant was not injured, intoxicated, or ill when he spoke to the police. Further, at the Walker[3] hearing defense counsel characterized defendant's statements to the police as having been offered "[v]oluntarily probably. He was trying to cooperate...." We gather from these indications that the trial court found that defendant voluntarily waived his Miranda rights. Because the court's findings well comport with all the indications in the record, because defendant has essentially conceded the point, and because there is no allegation that the police failed in any way to act according to accepted standards, we conclude that defendant's waiver of his Miranda rights satisfied the voluntariness prong of the test for a valid waiver. This leaves for our consideration the question whether that waiver was offered knowingly and intelligently.[4]

B. "Knowing and Intelligent" Waiver
The trial court announced that it was "clearly satisfied that [defendant] did not understand his Miranda warnings," explaining that "he didn't know the consequences of the statements. He did not know why he was being interrogated to start with. He did not know clearly what the words meantspecifically about the right to stop the interview when he wanted to." We hold that the trial court's decision is unsupported by the evidence when properly considered and is therefore clearly erroneous.[5]
The trial court's statements, considered along with other indications in the record, reveal that in concluding that defendant did not knowingly and intelligently waive his Miranda rights, the court both failed to recognize the applicable legal standard of mental competency for a valid waiver of those rights and attached too much significance to defendant's not having known more precisely why he was being interrogated. We conclude that when the evidence is considered without looking through the distorting prism of those two legal errors, the only conclusion that can *741 be reached is that defendant waived his rights knowingly and intelligently.
To establish a valid waiver of Miranda rights, the prosecution need only "present evidence sufficient to demonstrate that the accused understood that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him." Cheatham, supra at 29, 551 N.W.2d 355. "`That is the meaning of intelligent waiver; that and no more.'" Id., quoting Harris v. Riddle, 551 F.2d 936, 939 (C.A.4, 1977).
In the present case, the trial court placed great emphasis on defendant's not having known the full extent of why the police were interrogating him. This was error. An accused need not fully appreciate the ramifications of talking to the police in order to effect a valid waiver of Miranda rights. "Lack of foresight is insufficient to render an otherwise proper waiver invalid." Cheatham, supra at 29, 551 N.W.2d 355. Further, "a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege." Colorado v. Spring, 479 U.S. 564, 577, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). Finally, the United States Supreme Court has "never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." Moran v. Burbine, 475 U.S. 412, 422, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). The court thus erred in impugning defendant's waiver of his Miranda rights on the ground that the police declined to inform defendant specifically that he was under suspicion of murder.
The trial court also weighed heavily defendant's youth, learning disabilities, and emotional impairment in concluding that his waiver of Miranda rights was not knowing and intelligent. Although these considerations should not be discounted, neither should they be taken to elevate the obligations of the police to unreasonable levels.
Conceding that there is a level of mental deficiency so severe that under no circumstances would a defendant be able to knowingly waive his rights, we observe that short of this level of incapacity, a defendant's mental ability of necessity must be only one factor in the "totality of circumstances" inquiry. To hold otherwise would effectively immunize the mentally limited from interrogation and preclude the socially beneficial use of confessions, despite the absence of any indications of overreaching by the police. [Cheatham, supra at 43, 551 N.W.2d 355.]
We accept the trial court's finding that defendant "shows some ability to process verbal information and solve verbal problems, [but] is behind others in his age group in his expressive language skills and development of both abstract verbal reasoning and more practical problem solving skills." We observe, however, that this level of mental impairment falls far short of the severity required to render defendant incapable of knowingly waiving his Miranda rights. We note that defendant had the mental capacity, according to his friends, to break into a house, steal a rifle, and practice loading and shooting it. We further note that defendant himself admitted at his Walker hearing that he initially provided the police with fabrications in hopes of appearing cooperative and staying out of trouble, thus evidencing sufficient mental prowess to engage in cynical strategic calculation. Accordingly, we conclude that the trial court gave too much weight to defendant's not having attained fully mature intellectual or emotional development.
Having identified and discussed the two critical errors of law that clouded the trial court's consideration of the evidence regarding defendant's waiver of Miranda *742 rights, we now consider the evidence in the proper light.
Concerning whether defendant understood his right to counsel, when asked at the Walker hearing if he had understood that he had the right to talk to a lawyer before answering questions, and to have one present during any interrogation, defendant replied, "Not really." However, when asked to explain the right to stop the questioning and talk to a lawyer, defendant replied, "Thatthat when the police talk to me that I can talk to my lawyer with the police." When asked to explain the right to appointed counsel, defendant replied, "If we don't got no money, the Court give me one." Defendant's own words plainly indicate that he had an adequate understanding of his right to counsel.
With regard to whether defendant understood that he had the right to remain silent, the trial court stated that defendant had not understood that he could stop the interview if he wished. At defendant's Walker hearing, when defendant's lawyer asked if he understood the right to remain silent, defendant replied, "Can't go nowhere." Although this response seems ambiguous, a strong indication that it indicated something other than a misapprehension of the right to remain silent is that earlier in the hearing, when asked if he was saying that he had not known that he had the right to tell the police detective that he wanted to stop the interview, defendant replied, "I did know."[6] Defendant's plain words reveal that he reasonably understood that he was not obliged to continue talking to the police.
Finally, when asked at the Walker hearing if he understood that statements made to police could be used in court, defendant replied, "If you say something you go to Court for it." Defendant's response indicates a basic understanding that information given to police may resurface in a judicial proceeding.
Further weighing against any suggestion that the police exploited, intentionally or otherwise, defendant's youth or other limitations is that defendant's mother was present with defendant while the police explained the Miranda rights and she herself participated in waiving those rights. The police properly included defendant's mother in the proceedings, and properly relied on her representations regarding defendant's waiver of his rights. Cf. People v. Goforth, 222 Mich.App. 306, 316, 564 N.W.2d 526 (1997) (a parent may validly consent to a search of the bedroom of a minor child living with the parent).
We find it a matter of great significance that defendant's mother was present for, and participated in, the entire Miranda-waiver process. Parents normally have the duty and authority to act in furtherance of both the physical and legal needs of their minor children. This responsibility includes deciding whether the minor will undergo medical treatment, deciding what school the minor will attend, signing contracts for or on behalf of the minor, and assisting the minor in deciding whether to waive Miranda rights. In the present case, according to uncontroverted evidence, the police detective read to defendant and defendant's mother a form explaining Miranda rights, then asked defendant and his mother, "do you understand each of these rights I have explained to you?" Defendant and his mother answered yes. The detective then asked defendant *743 and his mother, "do you want to talk to a lawyer before answering any questions?" Defendant and his mother responded no. The detective then asked defendant and his mother, "will you waive your right to remain silent, and answer any questions we may have[?]" Defendant and his mother answered yes. Defendant and his mother then signed a waiver form that included the statement that they both "voluntarilywithout threats, duress, coercion, force, promises of immunity or reward having been made to me, agree to take part in this interview." Unquestionably, both defendant and his mother gave every indication of understanding the Miranda rights.
Because the evidence clearly reveals that, under the totality of the circumstances, defendant reasonably understood that he was free to stop talking or to insist that an attorney assist him with further questioning, and that his statements could be used against him in court, we hold that the trial court erred in concluding that defendant had not effected a knowing and intelligent waiver of his rights. While we do not suggest that defendant had an especially sophisticated understanding of what the police told him, we emphasize again that such an understanding is not legally required. The Miranda warnings are plain-language statements alerting criminal suspects to easily understood rights. We believe that an analysis of the circumstances reveals that defendant understood these warnings well enough.[7] When reviewing the record before us and considering his mother's participation in this matter, we have no reason to doubt that defendant had a sufficient understanding of his Miranda rights.
In Miranda and related cases, the United States Supreme Court established "a prophylactic rule intended to counter the coerciveness inherent in custodial police interrogation." Moore v. Fragatos, 116 Mich.App. 179, 195, 321 N.W.2d 781 (1982). It would be a misapplication of Miranda principles to allow them to function as an escape hatch through which criminal defendants may distance themselves from statements they made to the police where, as here, there is no allegation that the police failed to conduct themselves properly in all regards.
Finally, we feel that a response to the dissenting opinion is appropriate. We agree with the dissent that defendant evidenced only a limited understanding of his Miranda rights. However, we conclude that defendant's level of understanding well met the minimal requirements of Cheatham, supra at 43, 551 N.W.2d 355, to proffer a valid waiver of Miranda rights. We also agree with the dissent that certain language from the psychological reports in the record support the proposition that defendant did not knowingly waive his Miranda rights. However, and more importantly, we note that those same reports consistently concluded that defendant was competent to stand trial. Indeed, one evaluation stated that defendant "was able to demonstrate an adequate understanding of the nature and purpose of the legal proceedings against him." Another reported that defendant "was accurately oriented to person, place, situation, and time," continuing that there was "no disorganization or confusion in his thinking.
*744 He did not evidence any impairment or inefficiency in his cognitive functioning. He displayed no difficulties with attention, concentration, or general memory abilities." Although we agree with the dissent that defendant did not possess a sophisticated, lawyer-like understanding of his rights, we note that if a valid waiver of Miranda rights required such an understanding virtually no confession would ever be admissible.
Finally, lest anyone think that the issue that divides this opinion from the dissent has much to do with constitutional rights as traditionally understood, we emphasize what is not at issue here. First, the issue is not whether defendant was coerced into making a confession. He clearly was not. Second, the issue is not whether defendant's confession was voluntary. It clearly was. Third, the issue is not whether Miranda warnings were properly given to defendant. They clearly were. Fourth, the issue is not whether defendant waived his right not to cooperate with the police. He clearly did. Fifth, the issue is not whether defendant voluntarily did so. He clearly did. When recognized in this factual context, and considering that the United States Supreme Court has characterized the Miranda warnings themselves as nonconstitutional "prophylactic" requirements,[8] it is clear that the limited issue before us here bears little connection to the historically understood protections of the Fifth Amendment.[9]
Accordingly, we reverse the trial court's order suppressing evidence of defendant's statements to the police in this regard and remand with instructions to admit evidence of defendant's statements to the police into evidence at trial.[10]

II. Motion to Quash
On cross appeal, defendant contends that the trial court abused its discretion in denying his motion to quash, which defendant brought on the ground that the probate court abused its discretion in binding him over for trial on the charges of first-degree murder and assault with intent to commit murder. We disagree.
A defendant must be bound over for trial if, at the conclusion of the preliminary examination,[11] probable cause *745 exists to believe that the defendant committed the crime. People v. Orzame, 224 Mich.App. 551, 558, 570 N.W.2d 118 (1997). "Probable cause exists where the court finds a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense charged." Id., citing M.C.L. § 766.13; MSA 28.931; MCR 6.110(E). While guilt need not be established beyond a reasonable doubt, there must be evidence of each element of the crime charged, or evidence from which the elements may be inferred. People v. Flowers, 191 Mich.App. 169, 179, 477 N.W.2d 473 (1991). When reviewing a magistrate's decision to bind over a defendant for trial, the circuit court must consider the entire record of the preliminary examination and may reverse the magistrate's decision only if it appears that the decision was an abuse of discretion. Orzame, supra at 557, 570 N.W.2d 118. This Court reviews the circuit court's decision de novo to determine whether the magistrate abused its discretion. Id.
We conclude that the magistrate properly bound defendant over for trial on the first-degree murder charge. First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. People v. Schollaert, 194 Mich.App. 158, 170, 486 N.W.2d 312 (1992). "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." Id. Premeditation and deliberation may be established by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." Id. "Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime." People v. Jolly, 442 Mich. 458, 466, 502 N.W.2d 177 (1993). Proof of motive is not essential. People v. Wells, 102 Mich.App. 122, 128, 302 N.W.2d 196 (1980).
Three of defendant's friends testified during the probable cause hearing. Indications from these acquaintances included that on the day before the shooting defendant said, "These people keep messing with me I'm going to shoot them," and the day after said, "I shot that nigga" and "I got him." This evidence indicated that defendant acted with premeditation and deliberation in shooting Ronnie Green. Although other testimony indicated that defendant was shooting at inanimate targets and had no intention to shoot a person, where the evidence is conflicting, or otherwise raises a reasonable doubt with respect to the defendant's guilt, the defendant should be bound over for trial for resolution of the issue by the trier of fact. People v. Goecke, 457 Mich. 442, 469-470, 579 N.W.2d 868 (1998); People v. Selwa, 214 Mich.App. 451, 457, 543 N.W.2d 321 (1995). The evidence presented during the hearing was sufficient to support the magistrate's finding that there was probable cause to believe that defendant committed first-degree murder.
We likewise conclude that the magistrate properly bound defendant over for trial for assault with intent to commit murder. The elements of that crime are "(1) an assault,[[12]] (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." People v. Lugo, 214 Mich.App. 699, 710, 542 N.W.2d 921 (1995). "The intent to kill may be proven by inference from any facts in evidence." People *746 v. Warren (After Remand), 200 Mich.App. 586, 588, 504 N.W.2d 907 (1993). A person may have that state of mind without directing it at any particular victim. People v. Lawton, 196 Mich.App. 341, 350-351, 492 N.W.2d 810 (1992), citing People v. Lovett, 90 Mich.App. 169, 172, 283 N.W.2d 357 (1979).
Here, Hudack testified that he was standing in a well-lit area outside his house when he heard a bullet fly past his head. Hudack stated that he then turned around and saw defendant, who then ran off. Hudack continued that a few minutes later he saw defendant run through his backyard with what appeared to be a rifle. This testimony, along with evidence that on the day before the shooting defendant told a schoolmate that he was going to shoot someone, reasonably leads to the inference that defendant intended to kill. We acknowledge that other testimony suggests that defendant did not intend to shoot at Hudack. However, again, the existence of conflicting evidence merely creates a question for resolution at trial. Goecke, supra at 469-470, 579 N.W.2d 868; Selwa, supra at 457, 543 N.W.2d 321. Accordingly, the evidence presented at the probable cause hearing was sufficient to support the magistrate's finding that there was probable cause to believe that defendant committed assault with intent to commit murder.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
HOEKSTRA, P.J., concurs.
DOCTOROFF, J. (concurring in part and dissenting in part).
I concur with the majority opinion with respect to the resolution of defendant's cross appeal, and the conclusion that defendant's motion to quash regarding the charges of first-degree murder and assault with intent to commit murder was properly denied. However, I disagree with the majority with respect to whether the trial court erred in concluding that defendant did not knowingly and intelligently waive his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
When reviewing a trial court's decision with respect to whether a defendant voluntarily, knowingly, and intelligently waived his Miranda rights, this Court must review the entire record de novo, but will not disturb the trial court's factual findings unless they are clearly erroneous. People v. Sexton, 458 Mich. 43, 68, 580 N.W.2d 404 (1998); People v. Cheatham, 453 Mich. 1, 30, 551 N.W.2d 355 (1996) (Boyle, J). Clear error will not be found where this Court merely disagrees with the result reached by the factfinder, but exists only where "the reviewing court is left with a definite and firm conviction that a mistake has been made." People v. Lombardo, 216 Mich.App. 500, 504, 549 N.W.2d 596 (1996). Furthermore, because credibility is crucial to a determination of a defendant's level of comprehension and the trial judge is in the best position to make a credibility assessment, we must give deference to the trial court's findings with respect to whether a waiver was knowing and intelligent. Cheatham, supra at 29-30, 551 N.W.2d 355.
On the basis of the entire record before this Court, I cannot conclude that the trial court clearly erred in finding that defendant did not knowingly and intelligently waive his Miranda rights. At the Walker hearing, defendant gave the following testimony regarding his understanding of the Miranda rights:

Defense Counsel: Okay. Let's go over each one individually. You have the right to remain silent. Nate, do you know what that means?

Defendant: Can't go nowhere.

Defense Counsel: You can't go nowhere. Okay. Number 2anything you say can and will be used against you in a *747 court of law. Do you know what that means?

Defendant: If you say something, you go to court for it.

Defense Counsel: If you say something, you go to court for it. Number 3you have a right to talk to [a] lawyer before answering any questions, and you have [a] right to have a lawyer present with you while you are answering any questions. You know what that means?

Defendant: Not really.

Defense Counsel: Number 4if you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning if you wish one. Do you know what that means?

Defendant: If we don't got no money, the Court give me one.

Defense Counsel: Okay. Number five. You have the right to decide at any time before or during questioning to use your right to remain silent, and your right to talk with a lawyer while you are being questioned. Do you know what that means?

Defendant: Thatthat when the police talk to me that I can talk to my lawyer with the police.
Although defendant's testimony indicates that he had a limited understanding of his right to have a lawyer appointed to represent him if he could not afford to hire one, his right to have a lawyer present during questioning, and the fact that anything he said to the police could be used against him, it also indicated that he did not understand his right to remain silent, his right to use his right to remain silent at any time before or during questioning, or his right to talk to a lawyer before answering any questions. The majority asserts that defendant's understanding of his right to remain silent is evidenced by his testimony during the Walker hearing that he knew that he had the right to stop the interrogation. However, when viewed in context, defendant's testimony indicated that he knew that he could stop the interrogation to speak to a lawyer or to his mother, not that he understood that he need not say anything at all.
At best, isolated portions of defendant's responses at the Walker hearing indicated that he had a limited understanding of certain rights read to him. However, when viewed as a whole, defendant's testimony during the Walker hearing did not evidence a clear understanding of the Miranda rights. As already stated, this Court must give deference to the trial court's findings with respect to whether a waiver was knowing and intelligent. Cheatham, supra at 29-30, 551 N.W.2d 355. I see nothing in the transcript of the Walker hearing to justify the majority's conclusion that the trial court's finding that defendant did not knowingly and intelligently waive his Miranda rights amounted to clear error.
Furthermore, I disagree with the majority's contention that the trial court weighed too heavily defendant's intellectual and emotional development. The psychological reports[1] indicated that defendant was functioning intellectually at the borderline level and that defendant was behind his peers with respect to expressive language skills, abstract verbal reasoning, and practical problem-solving skills. Specifically, Dr. Stack noted:
[Defendant's] abstract verbal reasoning ability and short-term auditory memory are at the level of a 6 year old, and his expressive language skills, practical problem-solving skills and fund of general information are at the level of an 8 year old. Some of his difficulty may be related to inconsistency in taking in verbal information.
The skills discussed in the psychological reports were relevant to determining defendant's capacity to understand, and to knowingly and intelligently waive, his Miranda *748 rights. When interpreting defendant's responses during the Walker hearing, some regard must be given to the fact that defendant was an eleven-year-old child with the mental acuity of a six- to eight-year-old child. The fact that defendant was able to give simplistic responses when asked the meaning of certain Miranda rights should not be taken to mean that his understanding of the rights was similar to that of an adult or older juvenile or was sufficient to allow him to knowingly and intelligently waive the rights. I further disagree with the majority's contention that the fact that defendant was able to break into a house, steal a rifle, and shoot the rifle somehow translates into evidence that defendant sufficiently understood his Miranda rights to the extent that he was able to knowingly and intelligently waive those rights or minimizes the importance of considering defendant's mental impairments when determining whether he knowingly and intelligently waived his Miranda rights. It was appropriate for the court to consider defendant's intellectual and emotional development as part of the totality of the circumstances surrounding the interrogation, Cheatham, supra at 43, 551 N.W.2d 355, and I see no indication in the trial court's decision that the court gave inappropriate weight to those factors.
The majority also opines that the trial court improperly emphasized the fact that the police did not tell defendant or his mother that they were investigating a murder before defendant and his mother agreed to waive the Miranda rights, but only told them that they were investigating an incident involving a gun. I agree that whether a suspect is aware of all possible subjects of questioning before an interrogation is not relevant to determining whether the suspect validly waived his Miranda rights. Colorado v. Spring, 479 U.S. 564, 577, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). However, even without considering the fact that the police did not inform defendant and his mother that they were investigating a murder, the prosecution failed to meet its burden of proving by a preponderance of the evidence that defendant knowingly and intelligently waived his Miranda rights.
In summary, on the basis of my review of the record regarding the totality of the circumstances surrounding defendant's confession, I cannot conclude that the trial court's finding that defendant did not knowingly and intelligently waive his Miranda rights amounted to clear error. At the time of the police questioning, defendant was an eleven-year-old boy who was described in a psychological report as emotionally immature and whose intellectual functioning was well below the average for his age group. In fact, with respect to certain skills relevant to determining whether defendant had the capacity to understand the Miranda warnings, defendant was functioning at the level of a six- to eight-year-old child. There was no evidence that defendant had any prior formal court involvement or that he had any prior exposure to the Miranda warnings before being questioned by the police in the instant case. While defendant was able to articulate a simplistic understanding of the meaning of certain Miranda rights during the Walker hearing, he appeared confused with respect to the meaning of other rights. As previously noted, a determination whether an accused knowingly and intelligently waived his Miranda rights depends in large part on the accused's credibility. Cheatham, supra at 30, 551 N.W.2d 355. Here, the trial court, which had the opportunity to observe defendant's demeanor, stated that it was "clearly satisfied that [defendant] did not understand his Miranda warnings." From the record before this Court, I cannot conclude that the trial court's finding was clearly erroneous.
Accordingly, I would affirm the trial court's order granting defendant's motion to suppress his statements to the police and any evidence resulting therefrom.
NOTES
[1] The orders appealed from concerned pretrial matters and were issued by a probate judge sitting in family court. For purposes of this appeal, we will refer to the court below as the trial court.
[2] Pursuant to M.C.L. § 712A.2d(1) and (4); MSA 27.3178(598.2d)(1) and (4).
[3] People v. Walker (On Rehearing), 374 Mich. 331, 132 N.W.2d 87 (1965).
[4] We note that the recent decision of United States v. Dickerson, 166 F.3d 667 (C.A.4, 1999), held that Congress "enacted § 3501 with the express purpose of legislatively overruling Miranda and restoring voluntariness as the test for admitting confessions in federal court," and "provided that the failure to administer the warnings to a suspect would no longer create an irrebuttable presumption that a subsequent confession was involuntarily given." Id. at 686-687; citing 18 U.S.C. 3501(a) and (b). Thus, there appears to be some movement within the federal judiciary to accord respect to Congress' effort to restore the pre-Miranda "voluntariness" test in ascertaining the constitutionality of confessions.
[5] The dissent emphasizes this Court's obligation to defer to the credibility determinations of the trial court, but virtually nothing at issue here hinges on resolving credibility contests. Rather, what is at issue are matters of law.
[6] As the dissent points out, defendant provided this latter statement in response to being asked if he understood that he could stop the interview specifically for the purpose of speaking to his mother or a lawyer. The statement, taken at face value, nonetheless sheds light on defendant's understanding of his right to remain silent generally. It would strain at credulity to suggest that defendant thought that he could stop the interview only until he received some assistance from his mother or lawyer, but would thereafter be compelled to continue talking to the police. A more logical interpretation of events is that defendant knowingly and in fact cynically waived his right to remain silent as part of his strategy to appear cooperative.
[7] The trial court placed emphasis on the fact that defendant did not understand the ramifications or consequences of waiving his Miranda rights. In this regard, we note that the wisdom of Cheatham, supra at 29, 551 N.W.2d 355, in setting the legal threshold for understanding Miranda rights for purposes of a valid waiver quickly becomes apparent when one considers the extent to which supposedly sophisticated legal minds manage to disagree on Miranda principles. Recourse to Westlaw indicates that in addition to the hundreds of cases in which the appellate courts of this state have discoursed on the subject of Miranda rights, the United States Supreme Court has done so dozens of times, and the federal circuit courts of appeal have treated the subject literally thousands of times. This amount of deliberation indicates that few individuals have the sophistication to fully understand all the ramifications of Miranda rights.
[8] E.g., Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), citing Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). See also Withrow v. Williams, 507 U.S. 680, 690-691, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993), citing Duckworth v. Eagan, 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989); Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); New York v. Quarles, 467 U.S. 649, 654, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984); Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974).
[9] Also not at issue before this Court is whether defendant should be tried as an adult or a juvenile. Although the prospect of trying a person of defendant's age for first-degree murder as an adult invites great controversy, we express no opinion regarding this aspect of the case.
[10] While the dissent correctly observes that it was "appropriate for the court to consider defendant's intellectual and emotional development as part of the totality of circumstances," it is also appropriate for the court to consider defendant's actions as part of the totality of circumstances.

Judge O'Connell finds it ironic that defendant, having (according to heretofore uncontroverted evidence) broken into a home, stolen a rifle, practiced loading and firing the weapon, expressed an intention to shoot gang members, bragged about having done so in fact, and then lied to the police in an attempt to protect himself, would then turn around and protest that he had been too young and otherwise lacking in mental acumen to understand his Miranda rightseven with the careful explanations of the police and the help of his mother. Although Judge O'Connell recognizes the troubling social aspects of an eleven-year-old being interrogated under suspicion of first-degree murder, he finds more troubling still the substance of the charges. In Judge O'Connell's judgment, defendant clearly satisfied the legal threshold of competence, as expressed in Cheatham, supra at 43, 551 N.W.2d 355, to proffer a valid waiver of Miranda rights.
[11] The probable cause hearing conducted in this case was "the equivalent of the preliminary examination in a court of general criminal jurisdiction." MCL 712A.2d(4); MSA 27.3178(598.2d)(4).
[12] A simple criminal assault is "`either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.' "People v. Grant, 211 Mich.App. 200, 202, 535 N.W.2d 581 (1995), quoting People v. Johnson, 407 Mich. 196, 210, 284 N.W.2d 718 (1979).
[1] The psychological evaluations were not conducted for the purpose of determining whether defendant validly waived his Miranda rights, but were conducted for the purpose of assessing his degree of criminal responsibility and competency to stand trial.