688 N.W.2d 289 (2004)
PEOPLE of the State of Michigan, Plaintiff-Appellee,
v.
Nathaniel Jamar ABRAHAM, Defendant-Appellant.
Docket No. 123975.
Supreme Court of Michigan.
November 5, 2004.
On order of the Court, the motion for leave to file a brief in excess of 50 pages is considered, and it is GRANTED. The application for leave to appeal the April 10, 2003 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
Justices WEAVER and MARKMAN concur in statements below. Justice MARILYN J. KELLY joins Justice WEAVER's statement.
WEAVER, J., concurs and states as follows:
I concur with the denial of leave to appeal. Defendant was eleven years old when he was charged as an adult, M.C.L. § 712A.2d, with first-degree murder, assault with intent to commit murder, and possession of a firearm during the commission of a felony. A jury convicted defendant of second-degree murder, M.C.L. § 750.317, and acquitted defendant of the remaining charges. Defendant was twelve years old during trial and thirteen at sentencing. Experts testified at trial that defendant was developmentally disabled and functioned at the level of a six- to eight-year-old child.
In a carefully considered and reasoned decision, and in accordance with the sentencing options then available under M.C.L. § 712A.18(1)(n), the trial court sentenced defendant to placement at the Maxey Boys Training School within the juvenile justice system until his twenty-first birthday. The court reasoned that sentencing defendant to placement in the juvenile system, rather than in an adult prison, was in the best interests of the public and would best ensure that the focus during defendant's incarceration would be on his rehabilitation. The focus on rehabilitation in the juvenile system, the court noted, would better ensure that defendant would not pose a threat to society upon his release.
While this appeal of defendant's conviction slowly proceeded through the appellate system, defendant has reached the age of majority. He is eighteen and is scheduled to be released on January 19, 2007. If this Court were to grant leave and eventually reverse, defendant would face a new trial and the possibility of life in prison. The public would bear the cost.
Given the unique facts and circumstances of this case, I do not believe a grant of leave to appeal in this case would be in the best interests of the defendant or the public. Therefore, I concur in the denial of leave to appeal.
MARKMAN, J., concurs and states as follows:
Defendant was eleven when he killed Ronnie Green with a rifle. After defendant *290 and his mother signed a document waiving defendant's Miranda[1] rights, defendant gave the police an inculpatory statement. Defendant was charged with first-degree murder, assault with intent to commit murder, and two counts of possession of a firearm during the commission of a felony. The trial court granted defendant's motion to suppress the statement defendant made to the police, finding that defendant did not understand his rights or their waiver. In a split decision, the Court of Appeals affirmed the denial of defendant's motion to quash the information, reversed the granting of the motion to suppress the statement, and remanded for further proceedings. 234 Mich.App. 640, 599 N.W.2d 736 (1999). This Court denied leave to appeal on the basis that the questions presented should not be reviewed before the proceedings ordered by the Court of Appeals and any further subsequent review by the Court of Appeals. 461 Mich. 851, 597 N.W.2d 836 (1999). Following a jury trial, defendant was convicted of second-degree murder. The Court of Appeals affirmed. 256 Mich.App. 265, 662 N.W.2d 836 (2003).
Defendant again argues that his statement to the police should have been suppressed. An appellate court must not disturb "`a trial court's factual findings regarding a knowing and intelligent waiver of Miranda rights "unless that ruling is found to be clearly erroneous." Credibility is crucial in determining a defendant's level of comprehension, and the trial judge is in the best position to make this assessment.'" People v. Daoud, 462 Mich. 621, 629, 614 N.W.2d 152 (2000) (citations omitted). At the Walker[2] hearing, when asked what the right to remain silent means, defendant responded, "Can't go nowhere." When asked if he knew what it meant to have an attorney present, defendant responded, "Not really." A doctor testified that defendant's abstract verbal reasoning ability and short-term auditory memory are at the level of a six-year-old and his expressive language skills, practical problem-solving skills, and fund of general information are at the level of an eight-year-old. "`[T]he waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" Daoud, supra at 633, 614 N.W.2d 152 (citation omitted). After listening to and watching the defendant testify, the trial court concluded that it was "clearly satisfied that [defendant] did not understand his Miranda warnings."
I am not convinced that the trial court clearly erred in concluding that defendant did not knowingly and intelligently waive his Miranda rights, but it is unnecessary, in my judgment, to finally resolve this issue. The waiver issue has been preserved by the defendant, and thus, if he is correct that the waiver was ineffective, the prosecutor has the burden to demonstrate that the error was harmless beyond a reasonable doubt. People v. Anderson (After Remand), 446 Mich. 392, 521 N.W.2d 538 (1994). Besides defendant's confession, this is what the jury heard: about a week before the fatal shooting, defendant tried to buy a gun from Carl Turner to shoot "Buster"; two days later, defendant told Stephanie Saldana that he was going to shoot someone; that same day, Frederick Jenkins saw defendant shoot balloons tied to a tree in an alley with a rifle; on the *291 day of the shooting, Marcel Moolhuiszen saw defendant walking down the street with a gun and when Michael Duncan and Michelle Boykin asked if defendant's gun was loaded, defendant fired a shot into the ground and said, "that's your answer"; later, that same day, defendant shot at a stop sign, a streetlight, and a garage, and when Michael Hudack heard a shot whiz past his head, he saw defendant wide-eyed with a gun in his hand; and then, later that evening, after the fatal shooting, defendant told Frederick Jenkins that he thought he shot someone; then defendant went to Stacie Kay's home and seemed "upset and perplexed"; the next day, defendant gave the gun to Michael Hudack and told him to get rid of the gun "before I get in trouble with it"; finally, two days after the fatal shooting, defendant told Marcel Moolhuiszen and Stephanie Saldana, "I ain't playing no more. I got that nigga." Although the only direct evidence against defendant was apparently his custodial statement, there was substantial circumstantial evidence against defendant so much so, in my judgment, that I believe that the admission of defendant's custodial statement, if in error, was harmless error. Accordingly, I believe that the prosecutor has satisfied his burden of proof and I therefore concur in this Court's decision to deny defendant's application for leave to appeal.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] People v. Walker (On Rehearing), 374 Mich. 331, 132 N.W.2d 87 (1965).