# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KERRY BYRON HOLLEY,

        Defendant-Appellant.

UNPUBLISHED
January 19, 2016

No. 323606
Oakland Circuit Court
LC No. 14-249267-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317,[1] felon in possession of a firearm, MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(a). He was sentenced as a third habitual offender, MCL 769.11, to concurrent terms of 30 to 70 years' imprisonment for the second-degree murder conviction, 4 to 10 years' imprisonment for the felon in possession of a firearm conviction, and two years' imprisonment for each felony-firearm conviction. We affirm.

Defendant first argues that the trial judge's bias and impartiality denied him a fair trial. Specifically, defendant claims that the trial court engaged in misconduct by repeatedly admonishing defendant for his failure to answer the questions asked during his testimony, even when there was no objection from the prosecutor. Because defendant failed to raise a claim of judicial bias in the trial court, his claim is unpreserved. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). We review unpreserved claims of error for plain error affecting substantial rights. *Id*.

The United States and Michigan Constitutions both guarantee a defendant the right to a fair and impartial trial. See US Const, Am VI; Const 1963, art 1, § 20. A defendant must overcome a heavy presumption of judicial impartiality when claiming judicial bias. *Jackson*, 292 Mich App at 598. In *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015), our

---

[1] Defendant was found not guilty of first-degree murder, MCL 750.316(a).

-1-

Supreme Court clarified the proper analysis under which a claim of judicial misconduct is to be reviewed:

> A trial judge's conduct deprives a party of a fair trial if a trial judge's conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. [Citations omitted.]

A fact-specific inquiry is required. *Id*. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. A reviewing court must first consider the nature or type of judicial conduct asserted. *Id*. at 172. Judicial misconduct includes the belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to one side, or biased commentary in front of the jury. *Id*. at 172-173. However, the trial court is also required to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." MRE 611(a).

Defendant points to several instances where the trial court instructed defendant that he must answer the question asked of him without elaboration. After reviewing the record, we conclude that the trial judge's conduct did not pierce the veil of judicial impartiality. *Stevens*, 498 Mich at 164. Considering the totality of the circumstances, it is not reasonably likely that the trial judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against defendant. *Id*. The tone and demeanor of the trial judge was respectful for the most part. While there were times when the trial judge appeared to express impatience with defendant, comments that are critical of or hostile to counsel and the parties are generally not sufficient to pierce the veil of impartiality. *Jackson*, 292 Mich App at 598.

Moreover, the record shows that defendant did frequently offer testimony that was unrelated or unnecessary to the question posed to him. Defendant's trial counsel even struggled with defendant's narrative-type answers—he repeatedly stopped defendant's testimony to reign in defendant's answers. Thus, the trial judge's actions were directed at defendant simply because defendant appeared unwilling or unable to limit his answers. We further note that defendant's testimony encompassed more than 150 pages of transcript over a two-day period, yet defendant only points to eight instances in which the trial court admonished him to answer the question asked. Finally, by ensuring defendant's testimony was responsive, the trial court exercised reasonable control over the mode of interrogating witnesses so as to "make the interrogation and presentation effective for the ascertainment of the truth" and to "avoid needless consumption of time." MRE 611(a). Accordingly, we are unconvinced that the judge's comments illustrated judicial bias.

In conjunction with the trial court's comments regarding defendant's narrative testimony, defendant also complains that the trial court made another unfair comment toward defendant, which he claims cast doubt on his credibility. During cross-examination, defense counsel

objected, asserting that the prosecution was mischaracterizing the evidence in regard to a question asked. The trial court stated that it thought there was record evidence to support the question, but ruled that it would leave the dispute over the evidence to the judgment of the jury. We fail to see how this conduct exhibits bias where the trial judge correctly instructed the jury that it was the finder of the facts.

Furthermore, the trial court instructed the jury at the beginning of trial and at the close of proofs that his comments did not reflect his opinions on the case and that it should ignore any belief that the trial court had an opinion about the case. Because jurors are presumed to follow their instructions, the presence of these curative instructions cuts against a finding of judicial bias. *Stevens*, 498 Mich at 190. For these reasons, we conclude that the trial court's conduct did not constitute plain error affecting defendant's substantial rights, and defendant is not entitled to relief on this ground. In addition, because defendant cannot demonstrate judicial bias, we also reject defendant's claim that defense counsel was ineffective for failing to object. Counsel is not ineffective for failing to raise meritless or futile objections. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

Defendant next argues that the trial court erred by instructing the jury on second-degree murder. We disagree. "We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002). A trial court must instruct the jury with respect to necessarily included lesser offenses on a request for such instructions so long as "the charged offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007) (quotation marks and citation omitted). In *People v Cornell*, 466 Mich 335, 358 n 13; 646 NW2d 127 (2002), overruled in part on other grounds *People v Mendoza*, 468 Mich 527 (2003), our Supreme Court discussed when a second-degree murder instruction, as a necessarily included lesser offense of first-degree murder, should be given:

> In light of our holding that a requested instruction on a necessarily included offense must be supported by the evidence, an instruction on second-degree murder, as a necessarily included lesser included offense of first-degree murder, is not automatically required. Rather, such an instruction will be proper if the intent element differentiating the two offenses is disputed and the evidence would support a conviction of second-degree murder. However, given that in many cases involving first-degree murder, the intent element is disputed, we suspect that more often than not, an instruction on second-degree murder will be proper.

Thus, an instruction on second-degree murder would be proper in this case if the intent element was disputed and the evidence would support a second-degree murder conviction.

The intent required for first-degree premeditated murder is the intent to kill with premeditation and deliberation. *People v Taylor*, 275 Mich App 177, 179; 737 NW2d 790 (2007); MCL 750.316(1)(1). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995) (quotation marks and citation omitted). The intent required for second-degree murder is malice, which is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998).

As part of his argument regarding this claim of error, defendant asserts that the trial court erroneously held that the prosecution was automatically entitled to an instruction on second-degree murder solely on the basis that it was a necessarily included lesser offense of first-degree murder. We are not convinced that this is true from the record. While the prosecutor asserted such an argument in requesting the instruction, the trial court did not explain its decision when granting the prosecutor's request. Thus, it is not clear whether the trial court granted the request on that basis. Regardless, the trial court's decision to instruct the jury on second-degree murder was proper because the intent element was disputed and there was evidence to support a second-degree murder conviction. At trial, there was testimony that defendant carried his gun with him at all times for protection. Numerous witnesses, including defendant, testified that defendant and the victim were getting along on the day of the murder, despite their history of disagreements. The shooting occurred after the victim interjected himself in a dispute between defendant and his girlfriend. This evidence reasonably supports a finding that instead of killing the victim as part of a premeditated plan, defendant did so impulsively after the dispute arose. See *People v Fletcher*, 260 Mich App 531, 558 n 11; 679 NW2d 127 (2004) (holding that the trial court did not err in instructing the jury on second-degree murder where premeditation was disputed and there was evidence to support the second-degree murder charge). While the prosecutor argued at trial that the shooting was premeditated, that element was certainly in dispute, and, as discussed, there was evidence to support an instruction on second-degree murder. Accordingly, defendant is not entitled to relief on this basis.

Defendant next argues that he was denied a fair trial because the trial court did not instruct the jury on the charge of voluntary manslaughter. We conclude that defendant waived this claim of error. When a defendant fails to object or request a specific jury instruction, that defendant waives any claim of instructional error and this Court will grant relief only when necessary to avoid manifest injustice. *People v Sabin (On Second Remand)*, 242 Mich App 656, 657-658; 620 NW2d 19 (2000). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

In this case, defendant stated on the record numerous times that he did not want the jury to be instructed on voluntary manslaughter. After the trial court agreed to give the second-degree murder instruction, defendant's trial counsel questioned whether the court thought it was necessary for defendant to again state on the record that he still did not want the voluntary manslaughter instruction. It appears that trial counsel was merely trying to place defendant's wishes on the record again because when the trial court indicated it would not give that

instruction, trial counsel stated that it was "fine" because they "weren't going to ask for" the voluntary manslaughter instruction anyway.

On appeal, defendant essentially argues that his initial waiver became void after the trial court agreed to give the second-degree murder instruction. However, after the trial court stated that it would not give a voluntary manslaughter instruction, trial counsel stated that "we" were not going to ask for it anyway. Based on the record as a whole, we conclude that defendant did not intend to request the voluntary manslaughter instruction as trial, and now uses the trial court's statement in an attempt to assert it as a claim of error. Moreover, trial counsel stated on the record that he was satisfied with the instructions given, which did not include voluntary manslaughter. Accordingly, we conclude that defendant waived this claim of error.

Defendant next argues that the trial court erred by denying his motion for a directed verdict on the charge of first-degree murder. This Court reviews de novo a trial court's decision on a motion for directed verdict to determine whether the prosecutor's evidence, viewed in the light most favorable to the prosecution, could persuade a rational trier of fact that the essential elements of the crime were proven beyond a reasonable doubt. *People v Abraham*, 234 Mich App, 640, 656; 599 NW2d 736 (1999).

"First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *Id*. Defendant asserts that there was insufficient evidence that the killing was premediated. "Premeditation and deliberation require sufficient time to allow the defendant to take a second look." *Anderson*, 209 Mich App at 537. While there is no specific period of time that must pass for premeditation to be found, "[o]ne cannot instantaneously premeditate a murder." *People v Plummer*, 229 Mich App 293, 305; 581 NW2d 753 (1998). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of a crime. *People v Allen*, 201 Mich App 98, 100; 505 NW2d 869 (1993). "Premeditation and deliberation may be established by evidence of (1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Abraham*, 234 Mich App at 656 (internal quotation marks and citations omitted).

The prosecutor presented sufficient evidence that could persuade a rational trier of fact that the essential elements of the crime, specifically premeditation and deliberation, were proven beyond a reasonable doubt. Witnesses testified that the day before the murder, defendant stated that he was going to kill the victim if the victim disrespected him again. Defendant took his gun to a family gathering at the home of Dorothy Weatherspoon, the mother of his girlfriend, giving rise to an inference that defendant planned to kill the victim if the victim "disrespected" him at the family gathering. The lapse in time between the first and subsequent shots fired at the victim, as well as the number of shots, was also circumstantial evidence of premeditation and deliberation. Defendant fired three to six shots at the victim as he chased him through the house; defendant had time to think and aim at the victim for at least two of the subsequent shots. The length of time between the first shot and the subsequent shots, even though within seconds of each other, was long enough to afford a reasonable person time to take a second look at his actions. Viewing the evidence in a light most favorable to the prosecutor, there was sufficient evidence that could persuade a rational trier of fact that the elements of premeditation and

deliberation were proven beyond a reasonable doubt, and the trial court did not err in denying defendant's motion for directed verdict.

Defendant next argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that defendant did not act in self-defense. We disagree. Challenges to the sufficiency of the evidence are reviewed de novo to "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). "This Court reviews the evidence in the light most favorable to the prosecution." *Id*.

With the enactment of the Self-Defense Act (SDA), MCL 780.971 *et seq*., the Michigan Legislature codified the circumstances in which a person not engaged in the commission of a crime may use deadly force in self-defense without having the duty to retreat. *Dupree*, 486 Mich at 708. Pursuant to MCL 780.972(1)(a), deadly force may be used when "[t]he individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." When a defendant introduces evidence of self-defense "from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. *Dupree*, 486 Mich at 709-710.

The prosecution presented more than enough evidence to discount defendant's claim of self-defense. Defendant took his gun with him to the family gathering at Weatherspoon's house and witnesses testified that defendant and the victim were getting along before the gathering. At the party, the victim never threatened defendant or had physical contact with him before defendant fired the shots. Multiple witnesses testified that the victim was not armed when defendant shot him and that the victim was trying to get away from defendant but defendant followed the victim, continuing to shoot. The only testimony that defendant had reason to fear for his life came from defendant's testimony that the victim lurched at him with his hand in his pocket, prompting defendant to believe that the victim had a firearm. But this testimony was in conflict with other witness testimony that the victim's hands were by his side and that the victim was unarmed. "Witness credibility and the weight accorded to evidence is a question for the jury, and any conflict must be resolved in the prosecution's favor." *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005). Taking the evidence in the light most favorable to the prosecutor, there was sufficient evidence to negate defendant's self-defense claim. *Russell*, 297 Mich App at 721.

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood