#26798, #26799, #26800, #26801-a-JKK

**2014 S.D. 17**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THE PEOPLE OF THE STATE OF SOUTH DAKOTA IN THE INTEREST OF
M.S. AND K.S., MINOR CHILDREN, AND CONCERNING N.S. AND
M.S., RESPONDENTS.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN HOLZHAUSER
Special Assistant Attorney General
Pierre, South Dakota

Attorneys for petitioner
and appellee
State of South Dakota.

JULIE HOFER
Minnehaha County Office
of the Public Advocate
Sioux Falls, South Dakota

Attorneys for respondent and
appellant Father M.S., #26799
& #26801.

MARGARET V. GILLESPIE
Gubbrud, Haugland & Gillespie, Prof. L.L.C.
Alcester, South Dakota

Attorneys for respondent and
appellant Mother N.S., #26798
& #26800.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 13, 2014

OPINION FILED 04/02/2014

KONENKAMP, Justice

[¶1.] N.S. (Mother), age twenty-seven, and M.S. (Father), age twenty-six, appeal the circuit court's termination of their parental rights to their biological children — M.S. (daughter), age two, and K.S. (son), age one (collectively, "children").

## Background

[¶2.] Mother has four children.[1] Each has seen interventions by the Department of Social Services (DSS). DSS's investigation of Mother began in March 2010, when she was pregnant with her older daughter. DSS received a referral from the Carroll Institute that Mother was using marijuana while pregnant. Her urinalysis (UA) results had shown off-the-charts readings for THC (over 2000 nanograms) and a blood alcohol content of .184. Concerned for the wellbeing of her unborn older daughter, DSS placed Mother on involuntary commitment (IVC) hold. At a home visit on April 12, 2010, a DSS specialist observed that Mother's older son had substantial bruising along his jaw bone and scratches under his chin. Mother asserted that the maternal grandmother was the source of these bruises. DSS took her older son and Mother to Sanford Hospital. Although the source of the bruises was never determined, DSS substantiated Mother's neglect of her older son based on her admission that she did not seek medical care for his bruises for over eight hours. Her older son was placed in Child

---

1. Mother's two older children are son C.L., age four, and daughter M.S., age three. The older son is the biological child of Mother and C.L., Sr., with whom Mother was still legally married when she married Father on July 27, 2011. These children were not the subjects of this proceeding.

Protection and an abuse and neglect petition was filed on April 23, 2010. In accord with the IVC, the court ordered Mother, who was eight-months pregnant, be admitted into New Start Treatment Center on May 4, 2010. But Mother absconded from New Start within hours of arriving by cutting out the screen on her window and jumping out. Her whereabouts were unknown thereafter. She later reported giving birth to her older daughter on May 28, 2010, in the Detroit, Michigan area. The petition was eventually dismissed when Judge Kathleen Caldwell ordered the older son to be placed in his father's custody in Detroit on June 17, 2010.

[¶3.] DSS began receiving reports again on November 4 and December 9, 2010, of Mother neglecting older daughter's "severe diaper rash" and Mother being given a fat lip by Father while she was four-months pregnant with her daughter. Mother denied both reports. Soon after, DSS prepared an initial family assessment on Mother and Father. Around this time, Mother and Father were convicted of false impersonation. They received suspended sentences and were placed on probation. In early 2011, DSS received reports from the Children's Inn that Mother was using alcohol, marijuana, and ecstasy while pregnant and failed to obtain prenatal care. DSS again obtained an IVC against Mother in February 2011, but she absconded to Kansas. On March 30, 2011, Mother was located in Kansas with Father. She refused to participate in treatment and was extradited to South Dakota for violating the terms of her probation. When her daughter was born on May 13, 2011, both Mother and Father were in jail. The daughter tested positive for 65 nanograms of THC at birth. A month later, DSS met with Mother, who informed DSS that she was facing burglary charges. She also told DSS that

paternal grandmother obtained custody of her older daughter and took her to live with Mother's niece in Atlanta, Georgia. DSS offered in-home services to Mother, but she refused.

[¶4.]        On August 3, 2011, Father was sentenced for second-degree burglary and received five years in the penitentiary, which was suspended, with two years of probation. Mother was sentenced for grand theft by receiving stolen property and attempted second-degree burglary on October 5, 2011. She received eight years in custody on the grand theft charge and a consecutive five-year sentence on the burglary, both suspended, with two years of probation. On October 19, 2011, Sioux Falls police searched Mother and Father's apartment with a warrant to search for a stolen laptop. Many stolen items were found in the apartment. Mother's daughter was placed with DSS, Mother's probation was revoked, and Mother was again placed in IVC because her UA came back positive for THC while she was pregnant with her son. The petition for temporary custody order for her daughter was filed October 20, 2011, and was granted. An abuse and neglect petition was filed on November 7, 2011. The petition listed multiple protection orders and prior criminal charges for both parents.

[¶5.]        Mother and Father received appointed counsel on December 5, 2011. DSS met with Father and Mother about their plans for the children after the children return to their custody. DSS also provided both parents with visits with their children. On January 5, 2012, both parents stipulated that the daughter was abused or neglected. The court entered its order of adjudication on January 19, 2012, requiring Mother and Father to complete parenting classes, maintain housing

and employment, avoid further criminal activity, attend all visitations, and cooperate with DSS.

[¶6.] Father was sentenced for petty theft by receiving stolen property on March 9, 2012, and received an additional 132 days in jail. A week later, Father and Mother signed case plans that incorporated the court's directives in its order of adjudication. Mother gave birth to her son on April 2, 2012. The day after, the court granted DSS legal custody of the son and placed him in the same foster home as the daughter. On May 7, 2012, Mother and Father had an advisory hearing on their son's case. An amended abuse and neglect petition with regard to the son was filed on May 24, 2012. Mother and Father stipulated to the son's abuse and neglect on June 28, 2012. At a dispositional hearing for the daughter on July 11, 2012, the court granted the State's request to consolidate the son's and daughter's cases.

[¶7.] Father was released on probation on July 9, 2012. A month after leaving jail, Father became difficult to contact. Two months after leaving jail, Father had lost his job and remained unable to find stable housing. He also had not started parenting classes and was starting to miss visits regularly. One of Father's UAs was positive for alcohol and he refused to take others. In the meantime, Mother was sentenced on September 5, 2012, to ten years in the penitentiary, with five years suspended, for each of two counts of grand theft, to run consecutively. Her suspended sentence on the prior grand theft and burglary charges, totaling eight years, was also reimposed by the court.

[¶8.] While in prison, Mother was available for all her visits with the children. She completed classes in job training and parenting. Mother completed

an alcohol treatment course and engaged in therapy for her depression and anxiety. Mother was also nurturing and appropriate during her visits while in custody.

[¶9.]     Father's time outside custody came to an end on November 25, 2012, when a traffic stop found him in the back seat of a car smelling strongly of marijuana. A methamphetamine pipe was found under the back seat which contained meth residue. Father was arrested for this probation violation. Father's UA on November 27, 2012, tested positive for THC, meth, and amphetamine. At the time of the final dispositional hearing, Father had felony criminal cases pending, including a motion to revoke suspended sentence for attempted second-degree burglary (reimposing his five-year custody sentence), burglary charges (facing a maximum of twenty-five years in prison), and drug charges (facing a maximum of fifteen years).

[¶10.]    A dispositional hearing was held on January 18, 2013, in which law enforcement and DSS representatives were questioned. That hearing was continued to a final dispositional hearing held on March 12, 2013. After taking into account the proposed findings of fact and conclusions of law of the parties, the court entered its memorandum decision to terminate Father and Mother's parental rights to the children on May 28, 2013. The court filed its final dispositional findings of fact and conclusions of law, as well as its dispositional order, on July 16, 2013.

[¶11.]    Mother and Father filed timely, individual appeals on each of the children's cases. We ordered the appeals consolidated.

## Analysis and Decision

[¶12.] Mother and Father raise the same two arguments on appeal. First, they assert that the circuit court committed clear error by finding that clear and convincing evidence supported terminating their parental rights as the least restrictive alternative commensurate with the children's best interests. Second, they argue that the court committed clear error by finding that DSS engaged in reasonable efforts to reunite them with the children, which proved unsuccessful.

[¶13.] "Parental rights may be terminated if it is in the best interests of the child and is also the least restrictive alternative available." *In re E.L.*, 2005 S.D. 124, ¶ 10, 707 N.W.2d 841, 845. Before termination is permitted, however, DSS must provide reasonable efforts to "rehabilitate the family" to ensure "the conditions which led to the removal of the child" no longer exist. *See* SDCL 26-8A-26. "The 'reasonable efforts' and 'best interest of the child' and the 'least restrictive alternative' balancing process are essentially issues of fact." *E.L.*, 2005 S.D. 124, ¶ 10, 707 N.W.2d at 845. On appeal, parents have the burden of proving that these factual findings are in error. *People ex rel. C.H.*, 510 N.W.2d 119, 121 (S.D. 1993).

[¶14.] The substance of Mother's and Father's arguments is overridden by the uncontested findings of the court that statutory exceptions to the reasonable efforts requirement exist for both parents, SDCL 26-8A-21.1,[2] and that those very same exceptions serve as statutory bases for good cause to terminate parental rights,

---

2. SDCL 26-8A-21.1 reads, in pertinent part: "Nothing in § 26-8A-21 [the statute requiring reasonable efforts by DSS] requires reunification of a child with a parent who . . . ," and then it gives a list of the various aggravating factors.

SDCL 26-8A-26.1.[3] On the first exception to reasonable efforts and grounds for termination, the court determined that Mother had a documented history of abuse and neglect associated with chronic alcohol or drug abuse. *See* SDCL 26-8A-21.1(7), -26.1(7). The court found that the second statutory exception applied to Mother and Father — both were "incarcerated and unavailable to care for [the children] during a significant period of [the children's] minority, considering [their] age and [their] need for care by an adult[.]" *See* SDCL 26-8A-21.1(5), -26.1(5).

[¶15.]    Our Court has not explicitly articulated the standard of review for invocations of SDCL 26-8A-21.1 or SDCL 26-8A-26.1. But our precedent appears to support an abuse of discretion standard, further reinforcing the fact-based nature of these exceptions. *See People ex rel. D.B.*, 2003 S.D. 113, ¶ 15, 670 N.W.2d 67, 72 (per curiam) ("The reasonable efforts bypass provision found in SDCL 26-8A-21.1 provides the trial court with discretion to identify the most egregious cases early in the process and dispense with futile efforts toward reunification."). "An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74 (citation omitted).

[¶16.]    In his brief, Father does not directly argue against the application of SDCL 26-8A-26.1 or refer to the statute. Indeed, Father admits that he "was incarcerated for a majority of the time this case was pending" and that he was incarcerated at the time of the final dispositional hearing. The pendency of this

---

3.    The same aggravating factors in SDCL 26-8A-21.1 are listed under this statute as factors — any one of which — the court may utilize to "find that good cause exists for termination of parental rights." *See* SDCL 26-8A-26.1.

case encompassed the entire life of the son and all but the first four months of the daughter's life. He was in custody for both the children's births, and only attended visitation regularly — outside of custody — for one month. The record is devoid of when Father was to be released from custody, save the court's factual finding in its memorandum decision that "it is quite likely that he will be in prison long after Mother is released." Therefore, even indirectly, Father is unable to refute the court's application of SDCL 26-8A-26.1.

[¶17.] More perplexingly, both the State and Mother agree that even though the court refers to SDCL 26-8A-26.1 in its findings of fact, State and Mother attribute that reference to a typographical error, and contend that the court was only "referring to the necessity of reasonable efforts and the exception for the same under SDCL 26-8A-21.1" in its decision. The parties appear to have overlooked the court's memorandum decision, which included multiple citations to SDCL 26-8A-26.1, and which the court incorporated by reference into its findings of fact and conclusions of law. By failing to recognize the court's reasoning in its memorandum decision, none of the parties provided an analysis of SDCL 26-8A-26.1. That, in turn, means Mother and Father do not directly refute the court's alternative basis for terminating their parental rights. Accordingly, both Mother and Father waive that argument.[4]

---

4. It is the Court's "standard policy" that "failure to argue a point waives it on appeal." *In re Estate of Smid*, 2008 S.D. 82, ¶ 43 n.15, 756 N.W.2d 1, 15 n.15 (Konenkamp, J., dissenting). The exception to the standard involves a "pure question of law" which may be inquired into *sua sponte*, especially if it risks a miscarriage of justice. *Id.* (citing Childers & Davis, *Federal Standards of Review* § 6.03 (3d ed. 1999)). Whether Mother and Father had been and

(continued . . .)

[¶18.] By similarly failing to address the court's findings regarding SDCL 26-8A-21.1, Father also effectively waives his argument that DSS did not provide him with reasonable efforts for rehabilitation. *See In re A.L.*, 442 N.W.2d 233, 235 (S.D. 1989) ("We will uphold the judgment of the trial court if it is right for any reason."). *See also supra* note 4. Since his arguments on appeal extend no further, the final disposition on his case is affirmed.

[¶19.] Mother, on the other hand, addresses the court's finding of an SDCL 26-8A-21.1 reasonable efforts exception, but she does so by first admitting the veracity of the court's finding, acknowledging in her brief that the circuit court "may not have been required to apply" the reasonable efforts standard. She instead asks the Court for a narrow exception to this statutory language based on the particular circumstances of her case. She provides no authority to support this course, however. She instead relies on the argument that because she "accepted all the opportunities available to her" in prison and had completed dependency treatment for the first time, the statutory reasonable efforts exclusion should not be applied to her. This position has some merit, as her endeavors are relevant to the reasonable efforts requirement. *See* SDCL 26-8A-21.

---

(. . . continued)
would be incarcerated for a significant period of Children's lives considering their ages and needs for care, or whether Mother's long-running substance abuse was associated with documented child abuse, are "non-technical, fact-based inquiries" that make them more issues of fact than of law. *Cf. Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 16, 790 N.W.2d 52, 59 (defining issues of fact). Therefore, a "pure" question of law does not exist here, resulting in waiver.

[¶20.] Analogous case law shows that the circuit court did not abuse its discretion in this instance. While Mother's actions behind bars are admirable — obtaining work certifications, attending parenting and substance abuse classes, leading therapy sessions — Mother's situation was much like that of the mother in *In re A.S.*, 2000 S.D. 94, 614 N.W.2d 383 (per curiam), whose termination of parental rights we affirmed. While the mother in *A.S.* comported herself well behind prison after a history of theft and substance abuse, completed requisite classes and attended all visitations, "the facts remain[ed] that the trial court had to assume that A.S. would be without her Mother until June 2001 [twenty-one months after the final dispositional hearing] and some time thereafter while Mother found housing and continued visitation." *See id.* ¶¶ 2, 4, 24, 614 N.W.2d at 384, 387. We terminated the mother's parental rights solely on this ground, relying on the maxim that "[a] child's need for permanence and stability, like his or her other needs, cannot be postponed. It must be provided early." *Id.* ¶ 24 (citation omitted).

[¶21.] Applying the salient issue of *A.S.* to this case, Mother's expected release date is June 5, 2015, over twenty-six months after the final dispositional hearing. Further, given Mother's initiative to reform manifested only during a prolonged prison sentence, the children are more likely to "wait another indefinite period of time in hopes that Mother would become a suitable placement" outside of a controlled environment. *See id.* ¶ 25. Considering the similarity of this case to *A.S.*, the circuit court did not abuse its discretion by finding Mother's efforts futile in the face of the children's need for permanency.

[¶22.] As further comparison, the mother in *In re E.L.*, 2005 S.D. 124, 707 N.W.2d 841, also completed all tasks that were asked of her and sought out additional resources to attempt to regain custody. *Id.* ¶ 19, 707 N.W.2d at 847. Also like Mother, she irrefutably committed an aggravating act that precluded the need for DSS to engage in reasonable efforts and was good cause for termination (in the case of *E.L.*, the aggravated assault of her child). *Id.* ¶¶ 13-15, 18, 707 N.W.2d at 845-46, 847. Yet even though the mother in *E.L.* did not have a proclivity towards substance abuse like Mother, *id.* ¶ 19, 707 N.W.2d at 847, and was not incarcerated, *id.* ¶ 16, 707 N.W.2d at 846, we affirmed termination of the mother's parental rights based on the proper application of SDCL 26-8A-26.1 and DSS testimony of the mother's still-present risk of violence. *Id.* ¶¶ 19-20, 707 N.W.2d at 847.

[¶23.] In comparison, the DSS specialist in this case worked with Mother and the children for over a year. She testified that even with Mother's progress in the controlled environment of prison, she had no reason to believe Mother would be a successful parent on her release and, therefore, the reason for removal still existed. Moreover, comparing the lesser risk factors of the mother in *E.L.* and the fact that she was not incarcerated, Mother is in a much worse position to provide proper parental care to the children. With that, the court had sufficient evidence and reasoning to find Mother's efforts futile when considering the children's best interests.

[¶24.] Given the relevant caselaw, the record, and the clear statutory mandate, the circuit court did not commit clear error in terminating Mother's

parental rights.  There has been no showing that the circuit court abused its discretion when it found that reasonable efforts were futile and that good cause existed for terminating the parental rights of Mother and Father, as neither parent met their burden to prove the factual basis of the court's application of SDCL 26-8A-21.1 or SDCL 26-8A-26.1 was in error.

[¶25.]    Affirmed.

[¶26.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and WILBUR, Justices, concur.