# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 14, 2016

Plaintiff-Appellee,

v

No. 323461
Wayne Circuit Court
LC No. 14-002697-FC

JAMES MICHAEL SESSOMS,

Defendant-Appellant.

Before: SAAD, P.J., and WILDER and MURRAY, JJ.

PER CURIAM.

Defendant appeals his convictions after a jury trial of first-degree murder, MCL 750.316 (willful, deliberate, and premeditated killing), assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life imprisonment without the possibility of parole for first-degree murder, 30 to 50 years' imprisonment for assault with intent to commit murder, and two years' imprisonment for felony-firearm. For the reasons provided below, we affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant claims that there was insufficient evidence to support his convictions of first-degree murder and assault with intent to kill. We disagree.

We review a challenge to the sufficiency of the evidence de novo and in a light most favorable to the prosecution to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt. *People v Sherman-Huffman*, 241 Mich App 264, 265; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). All conflicts in the evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

## A. SELF-DEFENSE

Defendant contends that there was insufficient evidence to prove that he did not act in self-defense. Under the common law, a person has the right to use force to defend himself under

-1-

certain circumstances. *People v Riddle*, 467 Mich 116, 126; 649 NW2d 30 (2002). Lawful self-defense will excuse a defendant from homicide. *Id*. To be lawful self-defense, the evidence must show that (1) the defendant honestly and reasonably believed that he was in danger, (2) the danger feared was death or serious bodily harm, (3) the action taken appeared at the time to be immediately necessary, and (4) the defendant was not the initial aggressor. *Id*. at 119, 120 n 8. In a self-defense context, this Court has held that reasonableness "depends on what an ordinarily prudent and intelligent person would do on the basis of the perceptions of the actor." *People v Orlewicz*, 293 Mich App 96, 102; 809 NW2d 194 (2011). In general, a defendant does not act in justifiable self-defense when he uses excessive force or when the defendant is the initial aggressor. *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010).

"In 2006, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq*. Effective October 1, 2006, the SDA 'codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat.'" *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013), quoting *Dupree*, 486 Mich at 708. "[T]he SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force." *Guajardo*, 300 Mich App at 35, citing MCL 780.972(1).

Once a defendant introduces evidence of self-defense, the prosecutor bears the burden of disproving the defense beyond a reasonable doubt. *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009).

Defendant does not dispute that he intentionally shot Keith Hicks and Gaylan Matthews. He argues that the evidence shows that the shooting was justified because he testified that Hicks and Matthews were verbally aggressive toward him, they physically backed him into a corner of the laundromat away from the building's only exit, and Hicks drew a gun. Thus, defendant argues that his testimony placed the burden on the prosecution to prove beyond a reasonable doubt that defendant did not act in self-defense.

The prosecution met that burden and presented sufficient evidence to disprove defendant's claim of self-defense. First, an ordinarily prudent and intelligent person would not have honestly and reasonably believed that he was in danger of death or serious bodily harm in similar circumstances. Testimony at trial indicated that defendant is approximately 6' 3" tall and weighed about 270 pounds on the night of the shooting. Matthews testified that he is approximately 5' 7" tall and weighed about 130 pounds on the night of the shooting. Hicks was 5' 8" tall and weighed 143 pounds. While defendant testified that he felt threatened when Hicks and Matthews backed him into a corner of the laundromat away from the building's only exit, the great disparity in size between defendant and Hicks and Matthews, makes it less likely that an ordinarily prudent and intelligent person would have honestly and reasonably believed that he was in danger. See *People v James*, 267 Mich App 675, 677-678; 705 NW2d 724 (2005) (ruling that the evidence was sufficient to establish that the defendant did not have an honest and reasonable belief that he was in danger or that the unarmed victim posed a threat of serious bodily harm when the victim, who weighed nearly 100 pounds less than the defendant, lunged at the defendant and hit him on top of the head.) Additionally, the fact that defendant chased Matthews out of the laundromat after any potential threat had ended demonstrates that defendant in fact did not honestly and reasonably believed that he was in danger. See *Roper*, 286 Mich

-2-

App at 88 ("[T]he fact that defendant pursued [the victim] outside belies his claim that he feared for his life").

Moreover, the prosecutor provided evidence that disproved defendant's allegation that Hicks had a gun. The police did not find any weapon on Hicks's body, and all of the bullets found at the scene were from the same gun. Importantly, Matthews testified that neither he nor Hicks were armed during the confrontation. Thus, because there was evidence that defendant was not threatened with a firearm, and because Hicks and Matthews were substantially smaller than defendant was, any danger defendant may have feared was not death or serious bodily harm, and shooting Hicks and Matthews could not have appeared at the time to be immediately necessary. See *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993) ("[T]he fact that no one but defendant saw the victim with a gun . . . was sufficient for the jury to find that defendant's belief of imminent danger was either not honest or was unreasonable.").

Accordingly, the prosecution submitted sufficient evidence for a rational jury to find beyond a reasonable doubt that defendant did not act in self-defense.

### B. FIRST-DEGREE PREMEDITATED MURDER

Defendant also argues that the prosecution failed to present legally sufficient evidence to support his conviction of first-degree murder of Hicks. In order to convict a defendant of first-degree murder, the prosecution must prove that (1) the defendant intentionally killed the victim and (2) the act of killing was premeditated and deliberate. *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992).

On appeal, defendant only challenges the sufficiency of the evidence with respect to the premeditation and deliberation element. Premeditation and deliberation require sufficient time to reconsider his actions, or in other words, sufficient time to "take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). Factors relevant to the establishment of premeditation and deliberation include the following: (1) evidence of the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide. *Id.* "Circumstantial evidence and reasonable inferences from the evidence can be sufficient to prove the elements." *Id.* (quotation marks omitted).

Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence to show that defendant had the premeditated intent to kill Hicks. While the evidence showed that the parties did not have a prior relationship, the lack of a prior relationship is not dispositive in a premeditation and deliberation analysis. Additionally, while the testimony indicated that there was no prior personal relationship between the parties that could have led to the shooting, there was evidence to suggest that the parties were associated with rival gangs. While the parties testified that they were not associated with any gang, Officer Reizin testified that red clothing is associated with Blood gang membership, and that teardrop tattoos on a person's face and a five point star tattoo are associated with gang membership. Additionally, Officer Reizin testified that, "What's up, Blood," and "What's up, Cuz" are common greetings that are used to identify members of certain gangs. Testimony at trial established that defendant was wearing red clothing on the night of the shooting and had several star tattoos. Additionally,

testimony at trial indicated that Matthews had a teardrop tattoo on his face. These facts lead to a reasonable inference that the parties were members of rival gangs which could be a factor in determining premeditation. See *People v Pipes*, 475 Mich 267, 281; 715 NW2d 290 (2006) (noting that the evidence supported a finding of premeditation, in part, based on the victim's and the defendant's status as rival drug dealers).

Additionally, defendant's actions before the killing also suggest premeditation and deliberation. Specifically, after Hicks and Matthews arrived at the laundromat, where defendant already was present, defendant announced that he was going out to his car to get some cigarettes. The prosecution argued that this was a ruse, as defendant went out to his car to actually get his gun, and not to get his cigarettes as he claimed. This inference was supported by the fact that there was a no smoking sign in the laundromat and, more importantly, defendant was never seen with cigarettes after he supposedly went to get them. Accordingly, there was sufficient evidence for the jury to conclude that defendant had prepared, which demonstrated his premeditation. See *People v Ortiz-Kehoe*, 237 Mich App 508, 520-521; 603 NW2d 802 (1999) (ruling that the defendant acted with premeditation and deliberation, in part, because he "left the bathroom to fetch a knife").

Importantly, the amount of time between the initial confrontation and the shooting suggest that there was adequate time for defendant "to take a second look." While only a few minutes elapsed between the beginning of the argument and the shooting, sometimes mere seconds can be enough. *People v Meier*, 47 Mich App 179, 191-192; 209 NW2d 311 (1973). Johnson's testimony demonstrated that defendant had time during that period to have a brief exchange of words with Hicks and Matthews, walk to the back of the laundromat, and have a brief conversation with her. That period provided ample opportunity for defendant to have reflected, deliberated, and premeditated.

In sum, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence admitted at trial to show that defendant had acted with premeditation and deliberation when he killed Hicks.

## C. ASSAULT WITH INTENT TO MURDER

Defendant claims that there was insufficient evidence to support his conviction of assault with intent to murder Matthews. Assault with intent to murder is a specific-intent crime, which has the following elements: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (quotation marks and citations omitted). Each element of the offense, including the intent to kill, may be proven by circumstantial evidence and reasonable inferences arising from the evidence. *People v Lawton*, 196 Mich App 341, 350; 492 NW2d 810 (1992). Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent. *People v Harverson*, 291 Mich App 171, 178; 804 NW2d 757 (2010).

On appeal, defendant only challenges the intent element of this offense. However, the evidence was clear that defendant pulled out a gun and shot Matthews twice. This, alone, was sufficient to allow the jury to reasonably infer defendant's intent to kill based on his use of a gun,

a weapon "naturally adapted to produce death." *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985); see also *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 372 (2013) (recognizing that there is a presumption that people intend the natural consequences of their actions). Additionally, Matthews testified that after being shot once, defendant chased him and continued to shoot at him striking him again in the back. Thus, a rational trier of fact could infer that, because defendant chased Matthews and continued to shoot at him, he intended to kill him.

The circumstances surrounding the assault—particularly defendant's use of a gun and the fact that he chased Matthews in an effort to continue to shoot him—are sufficient to support the jury's conclusion that defendant acted with the intent to kill Matthews. Thus, the evidence presented was sufficient to sustain the conviction.

## II. STANDARD 4 BRIEF

Defendant also raises several issues in his Standard 4 brief on appeal. Having reviewed them, we conclude that none of them has any merit.

### A. VOIR DIRE QUESTIONING

Defendant argues that the trial court erred by refusing to allow defense counsel to continue asking questions during voir dire regarding a potential self-defense instruction at trial. Although not entirely clear, defendant seems to claim that by stopping his trial counsel from asking, in more depth, if the potential jurors could follow the instruction on self-defense, the court deprived him of that important information, which would have helped him to excuse jurors who could not follow the instruction. However, "an expression of satisfaction with a jury made at the close of voir dire examination waives a party's ability to challenge the composition of the jury thereafter impaneled and sworn." *People v Hubbard*, 217 Mich App 459, 466; 552 NW2d 493 (1996), overruled on other grounds by *People v Harris*, 495 Mich 120 (2014). Defense counsel indicated at the close of voir dire that she was satisfied with the jury. Therefore, this issue is waived.

In any event, the jurors all took an oath to render their verdict "in accordance with the instructions of the Court," which included the relevant instructions on self-defense. Thus, defendant's concern that some jurors might have been excused because of their inability to follow the court's self-defense instructions is not supported by the record and is speculative.

### B. PROSECUTORIAL MISCONDUCT

Defendant argues that because the prosecutor misrepresented facts in evidence and asserted facts that were never admitted into evidence, he was deprived of his due process right to a fair trial. In addition, defendant argues that defense counsel's failure to object to the prosecutor's statements constituted ineffective assistance of counsel.

By failing to contemporaneously object or request a curative instruction, defendant failed to preserve the issue for appellate review. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). Generally, claims of prosecutorial misconduct are reviewed de novo. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). The test is whether a defendant was denied a fair and impartial trial due to the actions of the prosecutor. *People v Rodriguez*, 251

Mich App 10, 30; 650 NW2d 96 (2002). However, unpreserved claims are reviewed for plain error affecting substantial rights. *Brown*, 279 Mich App at 134. Thus, in this context, reversal is only necessary if a timely instruction would have been inadequate to cure any defect. *Ackerman*, 257 Mich App at 449.

Defendant takes issue with the prosecutor's comments, both during opening statement and closing argument, that when defendant left the laundromat to get cigarettes, he was actually getting a gun. "A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted); see also *People v Christel*, 449 Mich 578, 599-600; 537 NW2d 194 (1995). Here, although there was no direct evidence to establish that defendant went to his car to get his gun and not his cigarettes, there was circumstantial evidence which supported the assertion. The prosecutor's reasonable inference that defendant had gone to his car to get his gun was supported by the fact that he was aware of the laundromat's no-smoking policy and that defendant was never seen with cigarettes after he supposedly went to get them. Therefore, the prosecutor was allowed to argue this inference to the jury during closing argument, as it was based on the evidence, and there was no misconduct. Likewise, because the purpose of an opening statement is to make a "full and fair statement of the prosecutor's case and the facts the prosecutor intends to prove," MCR 6.414(C), the comment was appropriate during opening statement as well.

Furthermore, because there was no improper prosecutorial conduct, defense counsel's failure to object to the prosecutor's statements did not constitute ineffective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

## C. EXCLUSION OF MANSLAUGHTER ON VERDICT FORM

Defendant's argument is unclear on this issue. It appears that defendant claims that the trial court provided the jury an instruction on voluntary manslaughter but erred when it did not include that option on the verdict form. But defendant misconstrues what the trial court did. Contrary to defendant's assertion, while the trial court did give instructions regarding what constituted voluntary manslaughter, it was not done in the context of providing an alternate, lesser charge to his murder count. Instead, it was given in the context of the assault count. After providing the elements of assault with intent to murder, the court further explained:

> The defendant can only be guilty of the crime of assault with intent to commit murder if he would have been guilty of murder had the person he assaulted actually died. *If the assault took place under circumstances that would have reduced the charge to manslaughter if the person had died, the defendant is not guilty of assault with intent to commit murder.*

> Voluntary manslaughter is different from murder in that for manslaughter the following things must be true. . . . [Emphasis added.]

Accordingly, it is clear that the instruction was to provide the proper context for the assault with intent to murder charge. Its purpose was to demonstrate that if Matthews had died as a result of the assault and *the resulting crime would have only been manslaughter instead of murder*, then defendant could not be guilty of committing assault with intent to murder. To fully inform the jury, the court then provided a definition of voluntary manslaughter. Therefore, defendant's view that the voluntary manslaughter instruction indicates that this option should have been provided on the verdict form, as an alternate to murder, is not supported by the record.

## D. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Defendant avers that his appellate counsel was ineffective for not raising on appeal the arguments contained in his Standard 4 brief.

"[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus (On Remand)*, 278 Mich App 174, 186; 748 NW2d 899 (2008). Hence, defendant must prove that appellate counsel's decision to not raise certain claims (1) fell below an objective standard of reasonableness and (2) prejudiced his appeal. *Id.* Defendant has shown neither.

Appellate counsel may legitimately ignore weak or frivolous arguments in order to focus on genuine arguments that are more likely to succeed. *Id.* at 186-187. Here, the issues that defendant wanted raised, as noted in his Standard 4 brief, have been addressed and were not meritorious. There was little legal principle behind all of defendant's Standard 4 issues. As such, it is clear that appellate counsel's decision to not pursue these other claims did not fall below an objective standard of reasonableness.

Furthermore, defendant's argument fails because he is unable to show any possible prejudice. Defendant claims that he was prejudiced because appellate counsel failed to raise certain issues to this Court. But when those exact issues have been brought to our attention through defendant's Standard 4 brief and addressed by us, any prejudice is "insignificant." *People v Pratt*, 254 Mich App 425, 430-431; 656 NW2d 866 (2002).

Affirmed.

/s/ Henry William Saad
/s/ Kurtis T. Wilder
/s/ Christopher M. Murray

-7-