*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAVION JAMES RODGERS,

Defendant-Appellant.

UNPUBLISHED
May 16, 2019

No. 342456
Wayne Circuit Court
LC No. 17-006709-01-FC

Before: MURRAY, C.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony ("felony-firearm"), MCL 750.227b. Defendant was sentenced to life imprisonment without the possibility of parole for the first-degree premeditated murder conviction, and two years' imprisonment for the felony-firearm conviction. We affirm defendant's convictions and sentences, but remand to allow the trial court to address restitution and court costs, and amend the judgment of sentence if necessary.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence presented to the trial court was not sufficient to support his conviction of first-degree premeditated murder, because there was no evidence that the crime was premeditated or deliberate.

This Court reviews a challenge to the sufficiency of the evidence in a jury trial de novo. *People v Gaines,* 306 Mich App 289, 296; 856 NW2d 222 (2014). The evidence is viewed "in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *Id.*

First-degree premeditated murder is defined as "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). "In order to convict a defendant of first-degree premeditated murder, the prosecution must first prove that the defendant intentionally killed the victim." *People v Unger*, 278 Mich App 210,

-1-

223; 749 NW2d 272 (2008). The prosecution must also prove that a defendant's actions were premeditated and deliberate. "[T]o premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted).

Defendant challenges his conviction based on an alleged lack of evidence available to show that the murder was premeditated or deliberate. Although premeditation and deliberation are different concepts, "the same facts may tend to establish each element . . . ." *Id*. at 240-241. Premeditation and deliberation each "require sufficient time to allow the defendant to take a second look." *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999) (quotation marks and citation omitted). The amount of time necessary to allow a defendant to think twice about his or her actions is not an exact figure; rather, "[i]t is often said that premeditation and deliberation require only a 'brief moment of thought' or a 'matter of seconds.' " *Oros*, 502 Mich at 242-243 (quotation marks and citation omitted; alteration in original). It is the factfinder's responsibility "to determine whether there was sufficient time for a reasonable person to subject his or her action to a second look." *Id*. at 242. Evidence that tends to establish premeditation and deliberation includes such things as "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *Abraham*, 234 Mich App at 656 (quotation marks and citation omitted).

When viewed in the light most favorable to the prosecution, the evidence supports a finding that defendant's decision to shoot the victim was premeditated and deliberate. Testimony was presented that showed defendant and the victim engaged in a lengthy argument in the afternoon on the day the victim was shot. At the conclusion of the argument, defendant walked down the street and fired a revolver in the air four times while staring at the victim and the victim's fiancée in a threatening manner. Expert testimony was presented to show that the victim was shot with five .38 caliber bullets, which could only be fired from a revolver similar to the one defendant was carrying. Specifically, a revolver capable of shooting .38 caliber bullets can only hold six rounds of ammunition. When defendant, earlier in the day and in the presence of the victim and his fiancée, fired the revolver in the air four times, only a maximum of two bullets could have remained in the revolver. However, defendant later shot the victim five times with the same gun. An empty box of .38 caliber bullets was also found in defendant's house. This evidence allowed the jury to infer that defendant went home and reloaded the gun before returning to the victim's house. Additionally, defendant lured the victim back to the scene of the shooting by telling him that he was at the victim's house while the victim was not home. All of these actions suggest that defendant planned to use the gun on the victim well before calling the victim and convincing him to return to his house. *Oros*, 502 Mich at 240.

Further, in the moments before the victim was shot, defendant pulled a gun out and pointed it at the victim. While defendant was pointing the gun at the victim, the victim took his shirt off to show defendant that he was not carrying a weapon. There was a brief pause between the moment defendant pointed the gun and when he pulled the trigger. Defendant shot the victim four times in the front, but the fifth bullet entered through the victim's back, suggesting that the victim turned around and attempted to move away from defendant while defendant was shooting at him. *Abraham*, 234 Mich App at 656. The evidence also indicated that defendant fled to Ohio, and was later apprehended in West Virginia, following the shooting. Evidence that

defendant fled the state after the shooting could also have been considered by the jury in assessing defendant's guilt. *Unger*, 278 Mich App at 226.

In sum, when viewed in the light most favorable to the prosecution, the evidence suggests that the murder was premeditated and deliberate. Defendant planned to shoot the victim, lured him to the scene of the crime, and shot him five times, going so far as to continue shooting as the victim attempted to move away from the gun. Although defendant contends that this evidence does not directly support the conclusion that the crime was premeditated or deliberate, "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Oros*, 502 Mich at 239 (quotation marks and citation omitted). Accordingly, there was sufficient evidence to support defendant's conviction of first-degree premeditated murder.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel where counsel failed to object to testimony from Sergeant Michael Lee, and failed to request a jury instruction on voluntary manslaughter.

"Whether the defendant received the effective assistance of counsel guaranteed him under the United States and Michigan Constitutions is a mixed question of fact and law." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). When examining a defendant's ineffective assistance of counsel argument, "this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Dixon-Bey*, 321 Mich App 490, 515; 909 NW2d 458 (2017) (quotation marks and citation omitted). However, because defendant failed to properly preserve this issue by filing a motion for a new trial or a *Ginther*[1] hearing in the trial court, this Court's review is "limited to mistakes apparent on the record." *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

Defendant argues that he was denied the effective assistance of counsel because defense counsel failed to object to Sergeant Lee's testimony regarding an empty box of .38 caliber bullets and failed to request a jury instruction on voluntary manslaughter.

To establish ineffective assistance of counsel, a defendant is required to demonstrate "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defense counsel is presumed to be effective, *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007), and a defendant must be able to "overcome a strong presumption that counsel's performance constituted sound trial strategy," *People v Riley (After Remand)*, 468 Mich 135, 140; 659 NW2d 611 (2003).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Defendant first argues that defense counsel was ineffective for failing to object to the introduction of Sergeant Lee's testimony on the basis of relevance under MRE 401. MRE 401, which governs the relevance of evidence, defines "relevant evidence" as:

> [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. [*Dixon-Bey*, 321 Mich App at 512, quoting MRE 401.]

Defendant takes issue with portions of Sergeant Lee's testimony concerning the empty box of .38 caliber bullets found at a house that was located on the same street as the victim's house. Defendant argues that the testimony was not relevant because no evidence was presented to show that he lived at the house where the empty box was found, or that the bullets belonged to him.

However, testimony presented at trial supported the conclusion that defendant lived at the house where the empty box was discovered. The victim's fiancée testified that defendant lived at the house in question, and defendant's stepfather allowed police officers to search the house for defendant, whom the officers traced to that address based on information given to them by the victim's fiancée. Further, defendant never proffered evidence challenging the assertion that he lived in the house or contesting the legality of the search executed on the house. The evidence, as presented to the jury, showed that bullets of the same type and caliber as those used in the shooting were found at a house associated with defendant. "To be relevant, evidence need only have a tendency to make the existence of *any fact that is of consequence* more or less probable." *Dixon-Bey*, 321 Mich App at 513. The presence of the empty box of .38 caliber bullets at an address that was connected to defendant increased the probability that defendant owned the bullets and used them to shoot the victim. The evidence also strengthened the credibility of testimony from the victim's fiancée, who was the sole witness able to identify defendant as the shooter. Evidence supporting identification testimony is inherently relevant because "identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the evidence was relevant under MRE 401, and defense counsel was not ineffective for failing to object. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

And, even if defense counsel successfully objected to the evidence at issue, the jury still would have heard testimony in which defendant was identified as the shooter by an eyewitness, who testified that defendant shot the victim five times with a revolver. The evidence linking the empty box of bullets to defendant was relevant to corroborate the testimony that defendant shot and killed the victim. Thus, even if the evidence was excluded, it is not likely that the outcome of the trial would have been favorable to defendant.

We also disagree with defendant's argument that defense counsel was ineffective for failing to request a jury instruction on voluntary manslaughter.

Voluntary manslaughter is a lesser included offense of murder, and its "elements are completely subsumed in the greater offense." *People v Mendoza*, 468 Mich 527, 540-541; 664 NW2d 685 (2003). To prove that a defendant is guilty of voluntary manslaughter, "one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control

his passion." *Id*. at 535. "[W]hen a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *Id*. at 541.

A review of the evidence does not support the argument that defendant killed the victim in the heat of passion, after adequate provocation. The evidence showed that, immediately before defendant shot the victim, he and the victim engaged in a verbal disagreement, which defendant initiated by remaining on the victim's property after the victim repeatedly asked him to leave. Earlier in the conversation, the victim threatened defendant with a crowbar by raising it up in the air and demanding that defendant leave the property. However, there was no evidence that the victim was still holding the crowbar or behaving in a threatening manner toward defendant when he was shot. Further, evidence indicated that defendant pulled out his gun and pointed it at the victim, but did not open fire until after the victim removed his shirt in an effort to show defendant that he was unarmed. The evidence does not support the conclusion that defendant acted in the heat of passion after adequate provocation. "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Pennington*, 323 Mich App 452, 465; 917 NW2d 720 (2018) (quotation marks and citation omitted). However, mere words, even those spoken during a verbal argument, "are not usually sufficient to constitute adequate provocation." *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009). Thus, because defendant was not entitled to a jury instruction on voluntary manslaughter, defense counsel was not required to "advance a meritless argument" by attempting to request a voluntary manslaughter jury instruction. *Ericksen*, 288 Mich App at 201. Accordingly, defendant was not denied the effective assistance of counsel.

Moreover, even if the evidence supported an instruction on voluntary manslaughter, as with his other argument, defendant has not established that defense counsel's failure to request the instruction prejudiced him. "Failing to request a particular jury instruction can be a matter of trial strategy." *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Defense counsel chose to pursue a defense theory that he was not properly identified as the shooter, and argued that the victim's fiancée, who was the sole witness to the shooting, wrongfully accused defendant of murdering the victim. Defense counsel has " 'wide discretion in matters of trial strategy . . . .' " *Id*. (citation omitted). If defense counsel successfully argued that defendant was not correctly identified as the shooter, defendant would have been acquitted, rather than convicted of a lesser offense. Although defense counsel's identity argument was an "all-or-nothing" defense, the decision to proceed with an all-or-nothing defense is a legitimate trial strategy. See *People v Rone (On Second Remand)*, 109 Mich App 702, 718; 311 NW2d 835 (1981). "The fact that defense counsel's strategy was ultimately unsuccessful does not render him ineffective." *People v Solloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016). Accordingly, defendant was not denied the effective assistance of counsel.

III. MISTRIAL

Defendant argues that the trial court abused its discretion by failing to grant him a mistrial after several jurors informed the trial court that they felt intimidated by members of the court gallery.

"This Court reviews for an abuse of discretion the trial court's decision to deny a defendant's motion for a mistrial." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). An abuse of discretion occurs when the trial court's ruling "falls outside the range of principled outcomes." *Id*.

During trial, a juror sent a note to the trial court stating that he believed members of the gallery were attempting to intimidate individual jurors. The juror stated:

[Y]esterday, I went and ate lunch in my car and I kind of felt that some of the people that were in the gallery kind of approached the vehicle, but then they got in their own vehicle. I didn't feel intimidated. But I could tell that [a fellow juror] was feeling very uneasy. And a few other people, too, was [sic] feeling uneasy, like felt that they were being followed or snickered at.

Another juror stated that some individuals who were watching the trial from the audience followed her down the street and stared at her when the trial court dismissed the jury for lunch. The juror stated that several other members of the jury had similar interactions during bathroom and lunch breaks. Upon learning that multiple members of the jury were feeling intimidated by members of the gallery, the trial court discussed the issue with the entire jury panel:

[L]adies and gentlemen of the jury, we have received information that some of you . . . perceived or felt untoward conduct, shall we say, by certain members of the gallery as they have come into or come out of the courthouse.

The question that I have for all of you is, has there been anyone else who has felt intimidated or uncomfortable [in] the presence of anyone, people who have been in this gallery as you walk through the courthouse and come into or go[] out of the courthouse and going to your cars. Show of hands, please.

Jurors 1, 2. We've got 9, 10, 11, 12, 13. And Juror 8. So we have a significant number.

This Court has opined that a mistrial should be declared only "when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008). Indeed, "[a] mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). As our Supreme Court explains:

[N]ot every instance of misconduct . . . will require a new trial. The general principle underlying the cases is that the misconduct must be such as to affect the impartiality of the jury . . . . A new trial will not be granted . . . if no substantial harm was done thereby to the party seeking a new trial . . . . The misconduct must be such as to reasonably indicate that a fair and impartial trial was not had . . . . [*People v Miller*, 482 Mich 540, 551; 759 NW2d 850 (2008) (quotation marks and citation omitted).]

While interviewing the jurors regarding their experiences of perceived intimidation from members of the gallery, the trial court asked whether any of the jurors felt as though they could not render an impartial verdict:

> And the question that I have for all of you is, is this experience that you had such that it would interfere with your ability to render a full, fair and true verdict based only on the evidence? Raise your hand if it does. I see no hands.

> Any members of the jury have any personal fear for their own safety as a result of this experience? And I see no hands raised.

None of the jurors felt that the perceived intimidating behaviors affected their ability to render a fair and impartial verdict. If "there is nothing to indicate any improper bias upon the juror's mind, and the court cannot see that it either had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside." *People v Nick*, 360 Mich 219, 230; 103 NW2d 435 (1960) (quotation marks and citation omitted). There was no evidence that the behaviors exhibited by the gallery members resulted in anything more than *perceived* intimidation, which did not affect the jurors' ability to function. Ultimately, because defendant presented no evidence that the intimidating behavior exhibited toward some of the jurors influenced the jury's overall ability to render an impartial verdict, we cannot conclude that the trial court abused its discretion by denying defendant's motion for a mistrial.

## IV. RESTITUTION

Defendant argues that the trial court erred by ordering him to pay a tentative $9,000 in restitution for the victim's funeral expenses without first confirming that the amount of restitution was correctly calculated. The prosecution concedes that a remand is necessary, and we agree.

In general, this Court reviews errors regarding restitution for an abuse of discretion. *People v Bell*, 276 Mich App 342, 345; 741 NW2d 57 (2007). However, defendant failed to preserve this issue by objecting to the trial court's pronouncement regarding restitution at sentencing. Consequently, this Court's review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* at 763. The third aspect "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* Reversal will only be warranted where the plain error leads to "the conviction of an actually innocent defendant," or where an error affects the "fairness, integrity or public reputation" of the judicial proceeding. *Id.* at 763 (quotation marks and citation omitted).

Crime victims have a statutory and constitutional right to restitution. *People v Gubachy*, 272 Mich App 706, 708; 728 NW2d 891 (2006). "Restitution encompasses . . . those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *Id*. The Crime Victim's Rights Act ("CVRA"), MCL 780.751 *et seq.*, "mandates that a sentencing court order convicted defendants to 'make full restitution to any victim of the defendant's course of conduct

that gives rise to the conviction[.]' " *People v Corbin*, 312 Mich App 352, 359; 880 NW2d 2 (2015), quoting MCL 780.766(2) (alteration in original). MCL 780.767, which governs factors to be considered by the trial court when determining an order of restitution, states, in relevant part:

> (1) In determining the amount of restitution to order . . . the court shall consider the amount of the loss sustained by any victim as a result of the offense.
>
> (2) The court may order the probation officer to obtain information pertaining to the amounts of loss described in subsection (1). The probation officer shall include the information collected in the presentence investigation report or in a separate report, as the court directs.
>
> (3) The court shall disclose to both the defendant and the prosecuting attorney all portions of the presentence or other report pertaining to the matters described in subsection (1).
>
> (4) Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney.

A victim's impact statement in the presentence investigation report ("PSIR") notes that the victim's family sought "restitution in the amount of $9,000 for funeral costs," but that "[n]o documentation of this amount was provided." The PSIR does not contain a separate restitution recommendation.

At sentencing, the trial court appeared to accept the $9,000 as a tentative restitution recommendation, and stated as follows:

> There's also going to be the order . . . that there be restitution in an amount to be determined. It will be payable to the family members who cover the burial cost of . . . [the victim]. That amount has been estimated at $9,000 for the funeral cost. But this [c]ourt is going to wait for the determination of the actual amount that can be validated for that purpose.

The trial court explained that the amount of restitution would be determined at a later date, and the judgment of sentence states that the amount of restitution owed is "TBD," or "to be determined." However, there is no evidence that the trial court directed the probation department to obtain information regarding the amount of the loss incurred by the victim's family, or that it made any further inquiry into the matter of restitution at all. See MCL 780.767(2). Further, a review of the record indicates that there is not an updated PSIR detailing a restitution recommendation, a separate report regarding restitution, or any other documentation substantiating the restitution amount. See MCL 780.767(2).

Although MCL 780.767 is "silent regarding how to determine the amount of the loss sustained by the victim as a result of the offense," this Court has found that "the amount [of restitution] should be based upon the evidence." *People v Guajardo*, 213 Mich App 198, 200;

-8-

539 NW2d 570 (1995). The record is devoid of any evidentiary support for the $9,000 restitution amount sought by the victim's family. The trial court erred by failing to adhere to the statutory factors within MCL 780.767 and neglecting to make findings regarding the restitution amount. Accordingly, and given the prosecutor's concurrence, this case must be remanded. On remand, the trial court must make appropriate findings regarding restitution in conformity with MCL 780.767. The trial court must also amend the judgment of sentence to reflect the final restitution amount imposed on defendant.

## V. COURT COSTS

Defendant argues—and again the prosecution agrees—that the trial court erred by ordering him to pay $650 in court costs without articulating on the record the factors it considered in calculating the amount defendant owed.

Defendant failed to properly preserve this issue by challenging the imposition of court costs at sentencing, when the costs were imposed. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Therefore, this Court's review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 752-753.

MCL 769.1k(1)(b)(*iii*) grants the trial court the authority to impose court costs. Under MCL 769.1k(1)(b)(*iii*), a defendant may be ordered to pay any costs that are reasonably related to the actual costs incurred by the trial court over the course of the defendant's trial, including:

(A) Salaries and benefits for relevant court personnel.

(B) Goods and services necessary for the operation of the court.

(C) Necessary expenses for the operation and maintenance of court buildings and facilities. [*People v Konopka (On Remand)*, 309 Mich App 345, 355; 869 NW2d 651 (2015), quoting MCL 769.1k(1)(b)(*iii*).]

When assessing court costs, the trial court is required to " 'establish a factual basis' from which this Court can 'determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court.' " *People v Stevens*, 318 Mich App 115, 121; 896 NW2d 815 (2016), quoting *Konopka*, 309 Mich App at 359-360.

At sentencing, the trial court stated only that defendant was required to pay "[c]ourt costs of $650." The trial court articulated no factual basis for assessing $650 in court costs, and a review of the record fails to indicate that a factual basis for the costs was discussed in the trial court. "[This Court] cannot determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)" because the trial court did not explain why it was ordering defendant to pay $650 in court costs. *Konopka*, 309 Mich App at 359-360. Since defendant has "specifically challenge[d] the lack of reasoning for the costs imposed," he must be "given the opportunity to challenge the reasonableness of the costs imposed." *Id*. at 360. The trial court erred by ordering defendant to pay court costs without establishing a factual basis for imposing the costs, and defendant is entitled to a hearing during which the trial court must articulate its rationale for imposing $650 in court costs.

## VI. CONCLUSION

We affirm defendant's convictions and sentences, but remand to allow the trial court to address issues regarding restitution and court costs, and for amendment of the judgment of sentence if necessary. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Kathleen Jansen
/s/ Michael J. Riordan