*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

OSCAR ALEXIS URTIZ-ESQUIVEL,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2024

No. 360037
Kent Circuit Court
LC Nos. 19-008960-FC and 21-
        001699-FC

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of first-degree murder, conspiracy to commit murder, assault with intent to commit murder, gang membership, carrying a concealed weapon, two counts of carrying a firearm during the commission of a felony ("felony-firearm"), and three counts of perjury. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case stems from the shooting and death of the victim, Saul Espinoza, at a fireworks celebration on July 6, 2019, in Grand Rapids, Michigan. The victim was shot after defendant and four companions, all members of the "Latin Kings" gang, observed a car being driven by the victim, who was a purported member of a rival gang, the "Mexican Mob." Defendant and the other four men yelled threats at the victim and ambushed his car when he stopped in traffic. Multiple shots were fired at the victim, resulting in his death. The victim's girlfriend, who was in the car with him, was also shot but survived.

The prosecutor filed multiple charges against defendant in two separate cases, one involving the murder and other offenses, and the second involving perjury. The perjury charges were the result of an interview defendant had with investigators under an investigative subpoena in which he falsely claimed to not know certain individuals connected with the crime. The trial court eventually joined the two cases at the prosecutor's request.

Defendant was subsequently convicted by a jury of first-degree murder, MCL 750.316; conspiracy to commit murder, MCL 750.316(4)(c)(*iii*); assault with intent to commit murder,

MCL 750.83; gang membership, MCL 750.411u; carrying a concealed weapon, MCL 750.227; two counts of felony-firearm, MCL 750.227b; and three counts of perjury, MCL 767A.9(1)(b). The trial court sentenced defendant to serve 82 months to 60 years in prison for each perjury conviction; 30 to 60 years' imprisonment for his first-degree murder, conspiracy to commit murder, and assault with intent to murder convictions; 104 months to 20 years' imprisonment for his gang membership conviction; two to five years' imprisonment for his carrying a concealed weapon conviction; and 2 years' imprisonment for his felony-firearm convictions.

After sentencing, defendant moved for a new trial on the basis of "newly discovered evidence." In the motion, defendant presented the affidavit of Ulises Ferrer, one of the members of the Latin Kings who was with defendant on the night of the shooting. In the affidavit, Ferrer took sole responsibility for the shooting. Ferrer stated that he initially lied about his involvement to "save" himself, but now did not want to "let anybody else go to prison for [his] actions." The court denied the motion, concluding that the affidavit was contrary to the video evidence and testimony from the other witnesses.

This appeal followed.

## II. JOINDER

Defendant first argues that the trial court erred when it joined the murder-related charges with the perjury charges for trial. We disagree.

## A. STANDARDS OF REVIEW

"Whether joinder is appropriate is a mixed question of fact and law." *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). This Court generally reviews questions of law de novo and factual findings for clear error. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). "Clear error exists when the reviewing court is left with the definite and firm conviction that a mistake has been made." *People v Chaney*, 327 Mich App 586, 587 n 1; 935 NW2d 66 (2019). The interpretation of court rules or statutes is a question of law that courts review de novo. *Williams*, 483 Mich at 231.

## B. ANALYSIS

Joinder in this case was governed by MCR 6.120(B), which states:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.
>
> (1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on
>
> (a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

"To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute 'related' offenses for which joinder is appropriate." *Williams*, 483 Mich at 231. "Offenses are 'related' if they comprise either 'the same conduct' or 'a series of connected acts or acts constituting part of a single scheme or plan.' " *Id*. at 233, quoting MCR 6.120(B)(1) and (2).

Defendant contends that the joining of the perjury charges with the murder charges was potentially confusing to the jury, the risk of prejudice was increased because there were so many charges filed, and the joinder of the perjury charges acted as propensity evidence in his murder trial. Defendant also highlights the lateness of the prosecution's motion for joinder, a fact that the trial court acknowledged. See MCR 6.120(B)(2).

The simple fact that the motion was filed at a late date does not necessarily demonstrate entitlement to relief if there is no prejudice, which defendant has failed to demonstrate. The prosecutor presented evidence, such as the security footage, demonstrating that defendant was at the scene of the murder, was involved in the murder, and lied about being present at the scene of the shooting. Defendant testified pursuant to an investigative subpoena in August 2019, one month after the shooting, and made false statements regarding his involvement with the killing. The two events were also connected insofar that the circumstances of the shooting provided context for an understanding of the sequence of events that led to the false statements. This sequence of conduct was sufficiently related to be considered a "series of connected acts" and related offenses. See MCR 6.120(B)(1)(b).

Moreover, we are unconvinced that the introduction of the perjury evidence was so prejudicial as to require the trial court to deny the prosecutor's motion. While it is true that one of the factors to consider under MCR 6.120(B)(2) is "the potential for confusion or prejudice stemming . . . from the number of charges," as the Michigan Supreme Court has observed, "[j]oinder of . . . other crimes cannot prejudice the defendant more than he would have been by the admissibility of the other evidence in a separate trial." *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011) (quotation marks and citations omitted). In other words, there is no prejudice to defendant because the false statements he made to investigators *about his knowledge of persons involved in the murder* would have otherwise been admissible in his murder trial. See MRE 801(d)(2).

For these reasons, the perjury charges and the murder charges were sufficiently related, and the trial court did not abuse its discretion when it joined the cases. See MCR 6.120(B)(1).

## III. NEWLY DISCOVERED EVIDENCE

Defendant next argues that the trial court abused its discretion when it denied his motion for a new trial on the basis of newly discovered evidence. We disagree.

## A. STANDARDS OF REVIEW

"A trial court's decision to deny a motion for a new trial is reviewed for an abuse of discretion." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). "This Court reviews for clear error the factual findings underlying the trial court's application of the law." *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). A trial court's findings are clearly erroneous when this court is left with the "definite and firm conviction that the trial court erred." *Id*.

## B. ANALYSIS

For a new trial to be granted on the basis of newly discovered evidence, a defendant must show that (1) the evidence itself was newly discovered, not merely its materiality; (2) the evidence was not cumulative; (3) the party could not have discovered and produced the evidence at trial, through reasonable diligence; and (4) the new evidence makes a different result probable in a retrial. *People v Johnson*, 502 Mich 541, 566; 918 NW2d 676 (2018). "In order to determine whether newly discovered evidence makes a different result probable on retrial, a trial court must first determine whether the evidence is credible." *Id*. at 566-567. A trial court's credibility determination is concerned with whether a reasonable juror could find the new evidence credible on retrial. *Id*. at 567. If a witness's lack of credibility is such that no reasonable juror could reasonably believe in the witness's veracity, the trial court should deny a defendant's motion for relief from judgment. *Id*. at 568. "However, if a witness is not patently incredible, a trial court's credibility determination must bear in mind what a reasonable juror might make of the testimony, and not what the trial court itself might decide, were it the ultimate fact-finder." *Id*.

In support of his motion for new trial, defendant presented an affidavit from Ferrer stating that he, not defendant, shot and killed the victim. The trial court found that the affidavit was unreliable and that the witness was not credible. Concerning credibility, contrary to the Ferrer's claim that he was the only person to approach the victim's car, security footage showed several individuals approach it, including defendant and Ferrer. Moreover, two witnesses testified that they saw defendant with a gun on the night of the shooting, and an expert witness testified that at least two guns were involved in the shooting. Accordingly, the trial court did not clearly err when it found Ferrer's statements unreliable. See *People v Norfleet*, 317 Mich App 649; 897 NW2d 195 (2016) ("As a rule the court is not impressed by the recanting affidavits of witnesses who attempt to show that they perjured themselves at the trial.") (quotation marks and citation omitted).

Moreover, Ferrer's affidavit would not make a different result probable in a new trial. The prosecutor provided sufficient circumstantial evidence for a trier of fact to reasonably conclude that defendant was one of the men who shot the victim. Defendant was one of three individuals in

-4-

his group who had guns on the night of the shooting. A witness overheard one of these armed individuals indicate that there was more than one shooter, a fact which an expert witness confirmed. The bullets came from a nine-millimeter firearm, which was the same type of gun that defendant was seen with. Thus, although no one saw defendant shoot the victim, the prosecutor was entitled to rely on circumstantial evidence to establish a criminal defendant's guilt. See *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

In summary, the trial court did not abuse its discretion by denying defendant's motion for a new trial because the newly discovered evidence contradicted many of the established facts surrounding the murder. See *Johnson*, 502 Mich at 566. In addition, sufficient circumstantial evidence existed for a reasonable trier of fact to conclude that defendant was guilty of first-degree murder, and the newly discovered affidavit would not have changed the case's outcome on retrial.

## IV. SUFFICIENCY OF THE EVIDENCE

Lastly, defendant argues that the prosecutor presented insufficient evidence to support defendant's convictions for conspiracy to commit murder, aiding and abetting, and first-degree murder. We disagree.

## A. STANDARDS OF REVIEW

This Court reviews a challenge to the sufficiency of the evidence by reviewing the evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime were proved beyond a reasonable doubt. See *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). When applying this standard, a court must draw all reasonable inferences and make credibility choices in support of the jury verdict. *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011).

## B. ANALYSIS

In a criminal case, a prosecutor must introduce evidence sufficient to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748 (1992). "The concept of sufficiency focuses on whether the evidence, taken as a whole, justifies submitting the case to the trier of fact or requires judgment as a matter of law." *People v Clark*, 172 Mich App 1, 6; 432 NW2d 173 (1988). Acquittal is the proper remedy when a defendant's conviction was not supported by sufficient evidence. See *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013). However, direct evidence is not always necessary to convict a defendant of a crime. *People v Lane*, 308 Mich App 38, 58; 862 NW2d 446 (2014). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to prove the elements of a crime." *Id.* Additionally, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 621.

## 1. FIRST-DEGREE MURDER

To convict a defendant of first-degree murder, "the prosecution must prove that the defendant intentionally killed the victim and that the act of killing was premeditated and

deliberate." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995); see also MCL 750.316(1)(a). "To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Woods*, 416 Mich 581, 599 n 2; 331 NW2d 707 (1982) (quotation marks and citation omitted). The killing must also have been committed without serious provocation. *People v Oros*, 502 Mich 229, 246; 917 NW2d 559 (2018).

First-degree premeditated murder requires some time span between the initial homicidal intent and the action necessary to establish a defendant's premeditation and deliberation. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). The time span must be sufficient to allow a reasonable person an opportunity to take another look. *Id*. The time span may be a relatively short period; even a few seconds may establish premeditation and deliberation. See *Oros*, 502 Mich at 242, 243. Additionally, premeditation and deliberation may be established by evidence of the prior relationship of the parties, the defendant's actions before the killing, the circumstances of the killing, and the defendant's conduct after the homicide. *People v Abraham*, 234 Mich App 640, 656; 599 NW2d 736 (1999). For example, the nature and number of a victim's wounds may be used to support a finding of premeditation and deliberation. *People v Unger*, 278 Mich App 210, 231; 749 NW2d 272 (2008).

It is undisputed that the victim in this case died from a gunshot wound. Moreover, there was no evidence of provocation by the victim. Consequently, the question of defendant's first-degree murder conviction hinged on whether there was a premeditated intent to kill and whether the killing was deliberate. The prosecutor offered sufficient evidence that would allow a rational trier of fact to find that the killing of the victim was committed by defendant and was the product of premeditation and deliberation. The bullets used in the murder came from the same type of firearm that defendant had in his possession: a nine-millimeter firearm. A witness, who previously had affiliations with defendant's gang, stated that he remembered defendant and his four companions walking toward where the victim's car was parked. Security footage supported this assertion. The footage also showed that, shortly after these men approached the victim's vehicle, people start running from the scene. Immediately after the shooting, defendant removed the magazine from his gun to check for bullets. Finally, the fact that defendant was one of only three individuals with a gun other than the victim and that the bullets matched the type of gun defendant was seen with supports the conclusion that his gun was one of the two firearms that shot the victim. On the basis of these circumstances, a reasonable trier of fact could conclude that defendant was one of the shooters. See *Lane*, 308 Mich App at 58.

A reasonable trier of fact could also infer from the evidence that the killing was committed with premeditation and deliberation. See *Oros*, 502 Mich at 247-250. The security footage indicated that approximately 23 seconds passed from the moment that the five individuals, including defendant, began walking toward the victim's vehicle to the moment when people started running from the gunfire. There was evidence to support the inference that defendant chose to approach the victim in order to shoot him for being a rival gang member. There was no evidence of provocation by the victim, and we have previously held that a period of mere seconds may establish premeditation and deliberation. See *id*. at 242, 243. This period of time was also sufficient to allow defendant to reconsider his plan and take a "second look." See *id*. at 249; *Walker*, 330 Mich App at 385.

All these circumstances demonstrate that a reasonable jury was entitled to find, on the basis of the evidence, that defendant killed the victim deliberately and with premeditation. See *Oros*, 502 Mich at 249-250. Accordingly, there was sufficient evidence to support defendant's conviction of first-degree murder.

## 2. AIDING AND ABETTING

Next, defendant argues that there was insufficient evidence to establish that defendant aided and abetted the killing of the victim, and that the trial court correspondingly erred in instructing the jury on that theory. We disagree.

A defendant can be convicted of first-degree murder on a theory of aiding and abetting. See *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). To convict a defendant of aiding and abetting a crime, the prosecutor must show that

> "(1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement." [*People v Moore*, 470 Mich 56, 67-68; 679 NW2d 41 (2004), quoting *Carines*, 460 Mich at 768.]

"Aiding and abetting describes all forms of assistance rendered to the perpetrator, including any words or deeds that may support, encourage, or incite the commission of a crime." *People v Jackson*, 292 Mich App 583, 589; 808 NW2d 541 (2011). An aider and abettor's knowledge of the principal's intent "can be inferred from the facts and circumstances surrounding an event." *Bennett*, 290 Mich App at 474.

In the present case, the evidence presented demonstrated that, at minimum, someone associated with defendant's gang, the Latin Kings, killed the victim because he was a member of a rival gang. Moreover, defendant and his companions, all of whom were members of the Latin Kings, were seen walking toward the victim's car. As the trial court noted, the security footage shows the group spaced out, similar to a "military patrol," as they approached the vehicle. Three of these individuals, including defendant, had guns. Thus, the evidence shows that defendant and his companions acted as one group as they approached the victim's vehicle, and there was sufficient evidence to show that defendant performed acts or gave encouragement that assisted in the commission of the homicide and that he intended to commit the crime or that he had knowledge of the principal's intent to commit the crime at the time that he provided aid and encouragement. See *Moore*, 470 Mich at 67, 68.

## 3. CONSPIRACY TO COMMIT MURDER

Lastly, defendant contends that the prosecutor provided insufficient evidence to support defendant's conviction of conspiracy to commit murder. Again, we disagree.

A criminal conspiracy is a partnership in criminal purposes in which two or more persons voluntarily agree to "effectuate the commission of a criminal offense." *Jackson*, 292 Mich App at 588. These individuals "must specifically intend to combine to pursue the criminal objective."

*Id.* The offense is complete "upon the formation of the agreement." *Id.* The intent and knowledge of the intent must be shared by the individuals. *Id.* To establish the existence of a conspiracy, a prosecutor must show that the individuals specifically intended to further, promote, advance, or pursue an unlawful objective. *Id.* Proof of the conspiracy may be derived from the circumstances and conduct of the conspirators. *Id.*

It is undisputed that, on the day of the homicide, at least two individuals who were members of defendant's gang killed the victim. As previously stated, defendant was one of three individuals in the group who carried a gun. Shortly before the shooting, when the victim and his girlfriend arrived at the location of the fireworks display, the group yelled threats at the victim. Security footage shows one individual subsequently chase the victim's car as it turned a corner. Immediately after the shooting, defendant and the group fled from the area where the shooting occurred and ran toward another vehicle. This same vehicle was identified in a separate security recording as it fled at a high speed from the crime scene.

This evidence supported a finding that defendant and his companions, upon identifying the victim as a member of a rival gang, engaged in a conspiracy to murder him. Defendant's gang membership, coordination with his fellow gang members, ownership of a firearm, and postshooting conduct all showed that he specifically intended to kill or help in the killing of the victim. Thus, the prosecutor presented sufficient evidence at trial to support defendant's conviction of a criminal conspiracy to commit murder.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani